## Walton-Wilson-Rodes Co. v. McKitrick.

(Decided January 5, 1911.)

### Appeal from Ohio Circuit Court.

1. Contracts—Stipulation Between Parties—Adoption by the Court. —Where the parties to an agreement have themselves stipulated a measure of damages, the matter being in its nature very uncertain and difficult of ascertainment otherwise, the court will apply their agreement as the true measure between them.

2. Terminating Contract—Equitable Reasons—Balancing Situation. —Equitable reasons or cause for terminating a contract implies that upon a balancing of the entire situation, the parties should be set simply where they were in the beginning, which is to say that the sub-contractor paid for what he had done, and the other party to take the situation as it then was, and, as if the contract had never been made.

HEAVERIN & WOODWARD for appellant.

GLENN & SIMMERMAN for appellee.

OPINION OF THE COURT BY JUDGE O'REAR—Reversing in original and affirming in the cross-appeal.

Appellants' partners, were contractors, engaged in building the M. H. & E. Railroad through Ohio county. They sub-let a portion of the work to appellee. It was for grading a section. The contract was written. Subsequently they let to appellee the work of building a culvert on the section which he was grading. This agreement was evidenced by the following letter:

"Hartford, Ky., June 19, 1907.

"Mr. W. S. McKitrick, R. F. D. No. 1, Hartford, Ky.

"Dear Sir:—As per, agreement with you we have included in your contract for grading section 44 on the M. H. & E. R. R. the box culvert masonry in cement, which the chief engineer has planned for said section, at the following prices:

Box culvert masonry in cement, per cubic yard ....$5.00
Paving ......................................... 2.00
Haul on stone per yd. mile (one mile freehaul).... .65
Haul on sand per yd. mile (one mile freehaul)..... .50
Haul on cement per ton mile (one mile freehaul)... .50
Reinforced concrete exclusion of steel per yd ..... 8.00
Steel for reinforced concrete per lb .............. .04

"This additional contract is subject to all terms and conditions of your original contract, and is made a part thereof.               Yours truly,

"WALTON, WILSON, RODES CO.,
"Per J. R. McDOWELL."

Appellee though having had many years' experience as a contractor in grading had no experience in building concrete or masonry. He so explained to appellants. They insisted on his doing the work, and when he said that he knew nothing of the cost of material, they proposed to furnish such as was needed at cost. He was delayed a while in beginning the work on the culvert because the stone selected by him was rejected by the railroad engineer. The cement was ordered from appellants who caused a carload to be shipped to Hartford in the name of another sub-contractor. When appellee went to haul it, he found that the doors were open, that it had rained on some of it and it was damp and damaged. He complained to the carrier's agent, as well as to appellant's superintendent, both of whom told him

to remove it and if it was not in fit condition he would be protected by the carrier, or by appellants. He did remove 32 barrels of it and placed it in an old house near his work. The cement was rejected by the engineer as unfit. Appellants had charged appellee with its cost price, $83.20, and deducted the amount from the monthly estimates of his work as reported by the engineer to appellants. The car came during rainy weather and could not be unloaded promptly. For the delay the carrier charged $5.00 as demurrage, which was also charged by appellants to appellee, and likewise deducted in his monthly settlement. He did not push the work on the culvert as the railroad engineer desired, who complained to the contractors. Finally, about August of 1907, they served on him this written notice:

"W. S. McKitrick will take notice that under his contract with Walton, Wilson, Rodes Co. of date Feb. 6th, 1907, the said Walton, Wilson, Rodes Co. elect to cancel and annul so much thereof as provides for a box culvert at station 2292x on section 44. Said annullment to be effective 10 days after service of this notice, and Walton, Wilson, Rodes Co. undertake to compensate you for material heretofore furnished on work done.

"WALTON, WILSON, RODES CO.,
"By ERNEST WOODWARD, Atty."

At that time the culvert was about one-half finished. Appellants then let that job to one Casseday, who completed it at a cost of $230.00 in excess of the original contract price.

Appellee had on hand certain material for use in the construction of the culvert which was turned over to and used by Casseday in completing it. Appellee claims that he was to look and did look to appellants to pay him for this material. They claim that he sold it to Casseday and looked to him for it. But it develops that they retained the amount upon settlement with Casseday. We think the evidence as well as appellants' conduct, show that appellee was to be paid by appellants for the material.

This suit was brought by appellee to recover, first, the amount charged him for the cement and demurrage, and, second, for the value of the material used by Casseday in the culvert. Appellants presented a counterclaim for the $230.00 paid in excess of appellee's contract price in finishing the job. The circuit court dis-

missed appellee's claim for the material, as well as appellants' counterclaim. The claim for cement, less demurrage, was allowed.

Appellee also asserted a claim for $275 on account of another contract for work done in Tennessee. But the circuit court disallowed that claim. An appeal is prosecuted by Walton-Wilson-Rodes Co., and a cross appeal by McKitrick

The appeal of Walton-Wilson-Rodes Co., involves first the correctness of the judgment dismissing their counterclaim.

It is not disputed in the evidence that appellants paid Casseday $230.00 more for finishing the culvert than they would have had to pay appellee under the contract. Nor does it appear that the sum paid Casseday was, under the circumstances, unreasonable.

The original contract between appellants and appellee contains two provisions for appellants' taking charge of the work, and respecting the claims of the respective parties for damages thereupon. Where the parties in such agreement have themselves stipulated a measure of damages, the matter being in its nature very uncertain and difficult of ascertainment otherwise, the courts will apply their agreement as the true measure between them. (Henderson Bridge Co. v. O'Connor, et al., 88 Ky., 303.) The contract stipulates, first:

"It is further agreed and understood, if at any time the contractor shall refuse or neglect to prosecute the work with a force sufficient in the opinion of Walton-Wilson-Rodes Co. for its completion within the time specified in this agreement, then, and in that case it is agreed that for failure to prosecute the work with a force sufficient to complete said work within the time specified herein, the company may hold all the outfit belonging to the contractors for the purpose only of completing said work, and further Walton-Wilson-Rodes Co. or the engineer in charge, or such other person as the engineer may designate, may proceed to employ such a number of workmen, laborers, and overseers as may, in the opinion of the said engineer, and Walton-Wilson-Rodes Co. be necessary to insure the completion of the work within the time heretofore specified, and at such wages as he may find it necessary or expedient to give; pay all persons so employed and charge the amount so paid to the contractor, as for so much money paid to the contractor on this contract; or the said Walton-Wilson-

Rodes Co. may, at their discretion, for the failure to prosecute the work with an adequate force, for non-compliance with their directions in regard to the manner of constructing it or for any other omission or neglect of the requirements of this agreement and specifications on the part of the contractor, declare this contract abandoned, which declaration of abandonment shall exonerate said Walton-Wilson-Rodes Co. from any and all obligations and liabilities arising under this contract, the same as if this agreement had never been made; and the reserved percentage of ten per cent. upon any work done by the contractor may be retained forever by the said company." And, second:

"It is further understood and agreed that for sufficient and equitable reason or cause, Walton-Wilson-Rodes Co. shall have the right, upon giving 10 days' notice to the contractor to suspend the execution of or annul this contract, in which event the contractor shall be entitled to estimates and compensation for the full amount of the work done in accordance with terms of this contract up to the time of such suspension or annulment, the reserved percentage will be paid to the contractor, but the contractor shall not be entitled to any damages on account of such suspension and annulment, or on account of any anticipated profits on uncompleted work."

It will be observed that there is not a provision for annulling a part of the contract. The letter of June 19. 1907, which seems to have been assented to by appellee, in terms is a part of the original contract; but it also says "this additional contract is subject to all terms and conditions of your original contract." As a matter of fact the second contract was an independent, a new contract. The original was complete in itself, and in truth did not comprise the building of the culvert. The effort of the parties was to make the second subject to the same terms as the first—which it was competent for them to do by adoption, but they could not make it a part of the first in the sense that it was originally within the agreement, when it was not. The treatment of the latter contract by both parties was as if it was a separate, independent contract. In view of its somewhat ambiguous terms and character the contemporaneous construction by the parties is persuasive as to its real nature and intent. It will, therefore, be treated as a separate contract, and as embodying all

the conditions of the original contract by adoption, including those quoted above, which quotations are the only features necessary to be considered on this appeal, except that the original provided that all the work undertaken was to be completed by September 1st, 1907. In its nature the work on the culvert had to precede the work in completing the grade over the culvert.

It is not pretended that appellee did not have a sufficient force on the culvert, or that he failed to comply with Walton-Wilson-Rodes Co.'s direction in the manner of constructing it, or omitted or neglected any of the requirements of the contract and specifications, any of which would have, under the terms of the first condition quoted above, entitled appellants to have declared the contract abandoned. In such an event, the contract stipulated that appellee was to have no claim for damages for not being allowed to finish the work, and that the ten per cent. retained theretofore on the monthly estimates would be taken by appellants as liquidated damages for his failure described. The fact was, the letting of this culvert work to appellee was in the nature of an emergency job, the original contractor for it having failed. Appellee took it late, and under protest, as well as without adequate equipment or experience. The season was unusually rainy. It rained nearly every day the whole summer. The work was thus interrupted. Appellee's other work, equally urgent and important, was suffering somewhat from the same causes. He was by temperament a slow, plodding man. He was sixty years old. These circumstances were doubtless in the minds of appellants "sufficient and equitable reason" for annulling the contract upon ten days' notice, as they did. It will be observed that the two paragraphs of the contract dealing with the right of the principal contractor to stop work of the sub-contractor, relates in effect to the cause not unreasonably, in this: In the first, it is for neglect or disobedience of plans or directions, which justifies the principal's stopping the sub-contractor, without notice, cutting off his claim for future benefits under the contract and sequestering the reserve which had been held back as a kind of security for his faithful performance. The second rests upon "sufficient and equitable reasons" appearing to the principal, involving no fault or dereliction of the other party, but which nevertheless in view of all the circumstances, arising

perchance after the contract had been partly performed, made it expedient that the contract be then terminated; therefore, it was, the principal agreed not to hold back any part of the ten per cent., reserve payment, or to retain material or labor furnished in the work, but to pay for all these.  This did not contemplate that any damages would accrue either way, because it is expressly said that the sub-contractor should not have damages in such event, and the relinquishment of all claims to the reserve fund, and to  material and labor  already furnished implies  clearly that  damages were  not to be claimed from the sub-contractor.  In truth, "equitable reasons or cause" for terminating the contract, implies that upon a balancing of the entire situation, the parties should be set simply where they were in the beginning, which is to say the sub-contractor paid for what he had done, and the other party to take the situation as it then was, and as if the contract had never been made. Thus we construe the clauses above quoted.  And so, it seems the parties themselves construed them at the time. For the evidence discloses that the notice of ten days was given, containing an offer to pay for material furnished; appellants' managing members testified that the books of his company show that the ten per cent. retained on the  monthly estimates was owing  appellee; appellants undertook to procure a settlement for the material left on hand; they did not claim until after this suit was brought against them anything on the matter now asserted as a counterclaim.  They continued to credit his account by items accruing since, and have even paid him some small amounts on this account since this suit was begun.

The counterclaim was properly dismissed.  But the claim of appellee, we think, should have been allowed. (Less one item of $15.00 for use of derrick and tools by Casseday, which is not included in appellants' undertaking.)  It also develops that by mistake $90.00 was credited to Casseday which should have been credited to appellee.  So, the ten per cent. on the culvert work done by appellee should have been allowed to him.

As for the item of cement, we see no reason for disturbing the chancellor's finding.

The claim for the $275.00 growing out of the Tennessee work, it develops was against another firm, comprising four of the members of appellant firm, but in-

cluding one not now a member.  The present firm also embraces new parties.  The new partnership is not liable for the debts of the old one.  That claim should be dismissed without prejudice.

This suit does not involve any account for work done or payments made or owing on the grading contract.

The judgment is affirmed on the original and reversed on the cross appeal.  Remanded for judgment in conformity herewith.