## Beckette, et al. v. Kinner, et al.

(Decided December 14, 1915.)

### Appeal from Boyd Circuit Court.

1. Contracts—Breach—Question for Jury.—In an action for damages for breach of a contract, evidence considered and held that the question of whether or not plaintiffs themselves failed to comply with the contract was for the jury.

2. Contracts—Breach—Damages—Excessive Verdict.—In an action for damages for breach of a contract, evidence considered and held to sustain the finding of the jury.

3. Contracts—Interpretation.—In interpreting a contract, where the language employed is uncertain in its meaning, not only the nature of the instrument but the situation of the parties, the objects which they had in view and their subsequent conduct may be considered in determining what the parties intended.

4. Contracts—Interpretation—Instructions.—In an action for damages for breach of a logging contract, whereby plaintiffs agreed with defendants to raft all their timber branded A. L. Co. coming out of Blaine, the contract construed and held to include not only the timber which defendants owned when the contract was executed, but all the timber which they subsequently purchased and rafted on Blaine Creek, and that an offered instruction to the contrary was properly refused.

5.  Contracts—Compromise Settlement—Evidence.—In an action for damages for breach of a logging contract, where defendants contended that a certain sum was paid in settlement of all claims which plaintiff had, evidence considered and held to sustain a finding of the jury against the contention of defendants.

6.  Contracts—Entire Performance—Terminable at Will.—A contract for the entire performance of a particular job of work is not terminable at the will of either party, even though the time in which the contract may be completed is necessarily uncertain.

7.  Contracts—Breach—Pleadings—Demurrer.—Where the relation of master and servant or principal and agent does not exist, and the contract is not one for personal services but an ordinary contract where plaintiffs had the right to do the work themselves or employ others for that purpose, a petition is not demurrable for a failure to allege that plaintiffs used diligent efforts to secure other employment but were unable to do so.

ZERFOSS & WEAKLEY for appellants.

GEO. B. MARTIN and D. M. HOWERTON for appellees.

OPINION OF THE COURT BY WILLIAM ROGERS CLAY, COMMISSIONER—Affirming.

In this action by plaintiffs, L. F. Kinner and Fred Kinner, against defendants, O. F. L. Beckette, M. W. Thomas, and J. A. Meredith, partners doing business under the firm name of Ashland Lumber Company, for damages for breach of a logging contract, plaintiffs recovered a verdict and judgment in the sum of $3,000.00. Defendants appeal.

Briefly stated, the facts are as follows: On December 1st, 1906, defendants entered into a contract with L. F. Kinner, by which Kinner agreed to care for, raft and deliver to defendants "all their timber branded A. L. Co., coming out of Blaine, a tributary of the Big Sandy River in Lawrence county, Kentucky." Plaintiff was to keep the boom lined up in a safe condition, so as to prevent the logs belonging to defendants from going out into the river, either by the breaking of the boom or its breaking loose from its mooring through any negligence of the plaintiff. Plaintiff agreed to take charge of said logs when delivered to the boom, and raft, oar and line them in good condition and deliver them to the agent of the defendants at the mouth of Blaine, securely tied, and to hold them until accepted by the defendants. He also agreed to furnish the tie poles, splices and oars, and do all the necessary labor in holding the boom and

rafting and tieing the timber safely to the bank of the Big Sandy River after being rafted. For this service defendants agreed to pay him the sum of 25 cents per log. On December 2nd, 1906, L. F. Kinner transferred the contract to his son, Fred Kinner, which assignment was approved and accepted by defendants.

When the contract was executed defendants were engaged in buying timber on Blaine Creek. This timber they desired transferred to their mills in Ashland. Plaintiffs continued to work under the contract until some time in the fall of 1907, when, according to plaintiffs' evidence, the defendants took the contract away from them and turned the job over to others. At that time plaintiffs were ready, willing and able to carry out their contract. Had they continued their work they could have made about 15 cents per log profit on the logs, and from 20,000 to 30,000 logs were rafted by defendants after the contract was breached. While some of the logs escaped from the boom and were caught by other parties, plaintiffs and other witnesses testify that it is impossible to construct and maintain a boom that will prevent some logs from getting away, and that during the time plaintiffs were operating under the contract they complied therewith in every substantial particular.

Defendants and other witnesses testify that plaintiffs suffered more logs to escape from the boom than the circumstances justified and that the contract was taken away from plaintiffs because of plaintiffs' failure to comply therewith. They also interposed a counterclaim, based on the additional expense rendered necessary by the carelessness of plaintiffs in allowing too large a per cent: of the logs to escape from the boom. In addition to this, they claim that plaintiffs were paid the sum of $98.31 in full settlement of all claims which they had against defendants.

It is first insisted that defendants had a right to terminate the contract because plaintiffs were jeopardizing the interest of defendants by failure to comply with the terms of the contract. While this contention is supported by some evidence, the weight of the evidence, we think, is to the effect that plaintiffs substantially complied with their contract. In view of the conflicting character of the evidence, the question was certainly for the jury.

Another contention made by the defendants is that the verdict is excessive. Fred Kinner estimated the number of logs that came out of Blaine after the breach at 30,000. He further testified that it would have cost him about 10 cents a log to do the work and that he could have made a profit on each log of 15 cents. L. F. Kinner fixed the number of logs at from 20,000 to 25,000. S. J. Hensley estimated the number as from 15,000 to 20,000. Other witnesses fixed the number at from 8,000 to 10,000. For the defendants, O. F. L. Beckette testified that his books showed the exact number of logs that were rafted by Messrs. Loar and Billups, who took charge of the work after the contract with the Kinners was terminated. He failed, however, to produce his books or to state the number of logs. While it is true that plaintiffs' witnesses do not accurately fix the number of logs that came out of the creek after the termination of plaintiffs' contract, yet, in view of the fact that their testimony would support even a larger verdict than that returned by the jury, and in view of the further fact that defendants, though possessed of accurate information on the subject, failed to testify to the number of logs, we see no reason to disturb the finding of the jury on the ground that the verdict is excessive.

There is no merit in the contention that it is conclusively shown that the sum of $98.31 was paid in full settlement of all claims which plaintiffs had against defendants. Plaintiffs' evidence is to the effect that they had rendered defendants a statement for work done during the months of June and July, and that the account thus rendered was paid by the check in question. Even the evidence for defendants fails to uphold their contention. It is clear, therefore, that the finding of the jury is not only not flagrantly against the evidence, but is supported by the decided weight of the evidence.

The point that the contract was terminable at will, and the alleged error of the trial court in refusing an instruction, limiting plaintiffs' recovery to the profit which they would have made on the logs which defendants actually owned when the contract was executed, will be considered together. By the contract in question plaintiffs obligated themselves to care for, raft and deliver to defendants "all their timber branded A. L. Co. coming out of Blaine, a tributary of the Big Sandy River in Lawrence county, Kentucky." In interpreting a con-

tract, where the language employed is uncertain in its meaning, not only the nature of the instrument, but the situation of the parties, the objects which they had in view and their subsequent conduct may be considered for the purpose of determining what the parties intended. Wilson, et al. v. Marsee, et al., 166 Ky., 487; Davis v. Hardin, 80 Ky., 672; Tanner v. Ellis, 127 S. W., 995; Jacoby v. Nichols, 62 S. W., 734, 23 Ky. Law Rep., 205; District of Columbia v. Gallaher, 124 U. S., 505, 31 L. Ed., 526; Walton-Wilson-Rodes Co. v. McKitnick, 141 Ky., 415. Both before and after the execution of the contract defendants were engaged in buying timber on Blaine Creek, with a view of transporting it down the creek and other streams to their mills at Ashland. When the contract was made they owned only 469 logs. Plaintiffs rafted not only these logs but 2,271 logs which the defendants acquired after the execution of the contract. Not only so, but defendants, claiming that plaintiffs failed to comply with the contract, employed Loar and Billups to continue the work. Construed in the light of these circumstances, we think it clear that the word "coming" is used in the sense of "coming in the future," and that the contract embraced not only the timber which defendants owned when the contract was executed, but all the timber which they subsequently purchased and rafted on Blaine Creek. In other words, the contract contemplated that plaintiffs should have the right to complete, and should complete, a particular job of work. Certainly, where entire performance is required by the terms of a contract, the contract is not terminable at the will of either party, even though the time in which the contract may be completed is necessarily uncertain. For the reasons above set out, it also follows that the trial court did not err in refusing the offered instruction, limiting plaintiffs' right of recovery to the profit which they would have made on the logs which defendants actually owned when the contract was executed.

The petition is not demurrable because it fails to allege that after the breach of the contract sued on plaintiffs used due diligence to get other employment but failed to do so. This is not a case of master and servant or principal and agent, based on a breach of a contract for personal services. It is a breach of an ordinary contract where no such relation exists, and where plaintiffs had the right to do the work themselves or employ

others for that purpose. To recover for the breach of such a contract, it is not necessary to allege that plaintiffs used diligent efforts to secure other employment but failed to, do so.

Judgment affirmed.