## Rowland v. Burley Tobacco Growers' Cooperative Association.

(Decided March 27, 1925.)

### Appeal from Grant Circuit Court.

1. Agriculture—Statement of Organization Committee as to Requisites of Marketing Agreement Properly Admitted.—In action against tobacco grower for breach of marketing agreement, statement of organization committee that signatures of 75 per cent. of tobacco growers had been obtained, as required by agreement, to make it binding, held properly admitted, in absence of any show of fraud, where agreement provided that decision of such committee was to be binding.

2. Agriculture—Agreement Making Decision of Organization Committee Final Valid.—Marketing agreement, providing that decision of organization committee that conditions prerequisite to enforcement had been complied with should be final, held proper and binding on members, in absence of any show of fraud in decision of officials.

3. Damages—Marketing Agreement Providing for Liquidated Damages Enforceable.—Stipulation in marketing association agreement, providing for liquidated damages for breach thereof, held enforceable.

4. Agriculture—Right to Recover for Breach of Marketing Agreement Established.—Where tobacco grower admitted himself member of marketing association, and that he sold tobacco in breach of association agreement, a copy of which was in evidence, together with proof that conditions precedent to its validity had

been complied with, such evidence held conclusively to establish right to recover for breach.

5. Appeal and Error—Bias of Jury Immaterial where Verdict Directed.—Where verdict was properly directed by court, alleged bias of jury held immaterial.

C. C. ADAMS, OVERTON S. HOGAN and M. H. McLEAN for appellant.

AARON SAPIRO, R. L. WEBB, STANTLEY REED AND ROBERT H. HAYS for appellee.

OPINION OF THE COURT BY JUDGE SAMPSON—Affirming.

The appellee, Tobacco Growers' Association, commenced this action in the Grant circuit court against appellant, Rowland, a member, to recover five (5c) cents per pound as liquidated damages on 10,000 pounds of tobacco produced by appellant in 1922, which, it is alleged in the petition and admitted by appellant, was sold and delivered outside the pool in violation of the terms of the pool contract, and to recover $250.00 attorney fees and cost incurred in this litigation, which, it is averred, was made necessary by the wrongful conduct of appellant in refusing to deliver his tobacco in accordance with the agreement. The suit is based upon the following provisions of the Growers' Cooperative Association agreement, signed by appellant Rowland and all other members:

"You Deliver all the Tobacco You Raise.

"13. (a) This agreement shall be binding upon the grower as long as he produces tobacco directly or indirectly, or has the legal right to exercise control of any commercial tobacco or any interest therein as a producer or landlord during the term of this contract."

"Do Not Break this Contract—This is Expensive.

"18. (a) Inasmuch as the remedy at law would be inadequate, and inasmuch as it is now and ever will be impracticable and extremely difficult to determine the actual damage resulting to the association should the grower fail so to sell and deliver all of his tobacco, the grower hereby agrees to pay to the association for all tobacco delivered, con-

signed or marketed or withheld by or for him, other than in accordance with the terms hereof, the sum of five cents per pound as liquidated damages, averaged for all types and grades of tobacco, for the breach of this contract; all parties agreeing that this contract is one of a series dependent for its true value upon the adherence of each and all of the growers to each and all of the said contracts.''

## ''You Will Get His Tobacco Anyway.

''(b) The grower agrees that in the event of a breach or threatened breach by him of any provision regarding delivery of tobacco, the association shall be entitled to an injunction to prevent breach or further breach thereof and to a decree for specific performance hereof; and the parties agree that this is a contract for the purchase and sale of personal property under special circumstances and conditions, and that the buyer cannot go to the open markets and buy tobacco and replace any which the grower may fail to deliver.''

## ''Violators Pay the Cost of Fighting Them.

''(c) If the association brings any action whatsoever by reason of a breach or threatened breach hereof, the grower agrees to pay to the association all costs of court, costs for bond and otherwise, expenses of travel and all expenses arising out of or caused by the litigation and any reasonable attorney's fee expended or incurred by it in such proceedings; and all such costs and expenses shall be included in the judgment and shall be entitled to the benefit of any lien securing any judgment hereunder.''

The petition sets forth in detail the organization of the tobacco pool and the signing of the marketing agreement by the members, including appellant. It then avers that appellant Rowland, a farmer, had produced or caused to be produced on his lands 10,000 pounds of tobacco in 1922, which he marketed and caused to be marketed outside the pool. It then pleaded and relied upon the provisions of the agreement, copied above, providing for five (5c) cents per pound, liquidated damages in case a member violated this agreement by failing to deliver tobacco according to the terms of the contract, and further provides for the payment of attorney fees and cost.

It prayed judgment against appellant for $500.00 damages and $250.00 for attorney fees and cost. Appellant filed answer denying liability, although admitting that appellant signed, executed and delivered the association agreement set forth in the petition. Among other things appellant denied "that plaintiff and its organizers and the said organization committee have duly performed all of the conditions of said Burley Tobacco Growers' Cooperative Association agreement on their part.

"Defendant denies that plaintiff has pooled or mingled the tobacco delivered to it by its members with tobacco of a similar type, grade and quality, delivered in the same crop year; and denies that plaintiff has classified said tobacco.

"Defendant denies that plaintiff has divided the net proceeds of all tobacco or tobacco products of like type, quality and grade, less charges, costs and advance, ratable among the growers in proportion to their deliveries to each pool.

"Defendant denies that plaintiff has been ready, able and willing to buy or receive the tobacco of defendant covered by said contract, or to pay for or market the same in accordance with the provisions of said contract.

"Defendant admits that he has produced and has acquired as landlord or lessor 10,000 pounds of tobacco of the 1922 crop.

"Defendant admits that he has withheld from the plaintiff and has delivered 10,000 pounds of said tobacco of the 1922 crop to persons other than plaintiff and has sold said tobacco to said other persons, but denies that said tobacco was withheld from plaintiff or sold to said other persons in violation of his said agreement as set forth in exhibit 'A' filed with plaintiff's petition.

"Defendant denies that none of said tobacco was covered by existing contract or crop mortgage and states that all of the said tobacco produced or controlled by him was covered by a certain mortgage, dated July 29, 1922, executed by this defendant and his wife, Winnie Rowland, in conjunction with G. W. Rowland and his wife, Rillie Rowland, to George R. Gutman, W. T. S. Blackburn, John J. Blackburn, J. E. Elliott and the First National Bank of Dry Ridge, Kentucky, which said mortgage is recorded in the

county clerk's office of Grant county, Kentucky, in Mortgage Book No. 3, at page 166, and defendant says that each of the said mortgagees are necessary parties to this action, and should be made such and summoned to appear herein.

"Defendant denies that by reason of the delivery of said tobacco to said other persons plaintiff has been damaged in the sum of $500.000, or any other sum; denies that costs of court, costs for bond and otherwise, expenses of travel, expenses arising out of or because of this litigation and a reasonable attorney's fee incurred by plaintiff, reasonably amount to the sum of $250.00, or any other amount."

Appellant affirmatively pleaded that in the year 1921 he produced and caused to be produced two separate crops of tobacco covered by the agreement mentioned in the petition, amounting to 11,760 pounds and 5,888 pounds, respectively, which he delivered to the pool; that after the association began to receive tobacco from members, and after establishing "certain standards for grading, classifying and separating tobacco into various types and grades," changed the same by raising the standards and grades when appellant delivered his crops and applied the higher standards and grades to his crops, thus reducing the amount and value of his crops as graded, and as soon as appellant's crops had been thus graded appellee association again changed its grades back to those established in the first place and that this was done in fraud of his rights and for the purpose of discriminating against his tobacco on grades and in favor of the crops of other growers, and that in consequence he lost a large sum of money mentioned in his answer. A general demurrer was interposed to the answer and sustained by the court and appellant given leave to amend. Thereupon he filed an amended answer, counterclaim and set-off, attacking the validity of the association agreement on the grounds that it was never properly organized and authenticated because 75 per cent of the tobacco production in Kentucky, Indiana, Tennessee and Ohio never signed up in accordance with the requirements of the preliminary agreement, executed by appellant and other members of the pool in accordance with section 13, reading:

## "SEVENTY-FIVE PER CENT OF THE PRODUCTION IN KENTUCKY, INDIANA, TENNESSEE AND OHIO MUST BE SIGNED UP.

"(13) If by November 1, 1922, signatures of tobacco growers or persons eligible for membership, covering at least three-fourths of the aggregate production of burley tobacco in Kentucky, Indiana, Tennessee and Ohio, in 1920, shall not have been secured for this agreement, the organization committee shall so notify every subscriber at his address noted below, prior to November 15, 1922, and his signature and the agreement signed by him shall be deemed cancelled."

By an amended answer appellant denied that prior to November 15, 1922, signatures of persons eligible for membership, including tobacco growers and other eligibles, covering at least three-fourths ($\frac{3}{4}$) of the aggregate production of burley tobacco in the states of Kentucky, Tennessee, Indiana and Ohio, during the year 1920 were secured by plaintiff, or its organization committee, or by any one for its use and benefit. Following this it is averred: "The defendant states that the total number of pounds of burley tobacco grown in the said states of Kentucky, Indiana, Tennessee and Ohio in the year 1920 were 297,000,000; that prior to November 1, 1922, plaintiff had not secured signatures of tobacco growers or persons eligible for membership, for the said agreement, covering at least three-fourths of the said 297,000,000 pounds of tobacco, and for the said reason the defendant's signature to the said agreement and the said agreement itself was cancelled and rendered null, void and without any force or effect."

The due execution of the statement or report of the organization committee pleaded in the petition and filed as "Exhibit B," therewith, was denied in the amended answer.

Appellant affirmatively pleaded that if the statement was executed by the organization committee as set forth in the petition, which he denied, it is false, fraudulent and not based on true, valid or correct reports or information. The answer denied that the total number of pounds of burley tobacco grown in the four states named in 1920 was 209,203,482, and affirmatively averred that the correct number of pounds so grown in 1920 was 297,-000.000 pounds.

It is then averred in the answer: "Defendant states that the declaration in the said organization committee's statement, signed by its chairman, that the plaintiff's said standard association agreement had been signed by more thn 42,000 growers, covering more than three-fourths of the aggregate production of burley tobacco in Kentucky, Indiana, Tennessee and Ohio in 1920, and that all conditional provisions of the said association agreement have been performed, and that the said association agreement is now in force and effect, were not and are not true, and were and are false, fraudulent and untrue."

A general demurrer was filed to the answer as amended, but the court did not rule upon it. Issue being joined a jury trial was had. At the conclusion of the evidence for the plaintiff association the appellant, as defendant, moved the court to direct the jury to find and return a verdict for him, which motion the court overruled. At the same time the appellee association entered a motion that the court direct the jury to find and return a verdict for it, and this motion was, over the objection of appellant, sustained and the jury instructed to find and return a verdict for the appellee association in the sum of $500.00 as liquidated damages and for the sum of $50.00 as costs and attorney fees, the latter sum being the amount proven by the association upon this item. Judgment being entered upon the verdict thus directed, Rowland prosecutes this appeal.

The grounds relied upon for a reversal of the judgment are summarized by appellant in his brief as follows:

"1. It is a prerequisite to the association agreement that it obtain the signatures of the producers of at least three-fourths of the burley tobacco produced in 1920 in the states of Kentucky, Ohio, Indiana and Tennessee. This it did not do.

"2. The provision of the association agreement that its organization committee's finding on the percentage production of signers should be conclusive, does not prevent the court from inquiring into the same on the ground of fraud.

"3. The statement of Robert W. Bingham, chairman of the organization committee, should not have been admitted as testimony in the case.

"4. The appellant entitled to an impartial jury and not one made up almost exclusively of members of appellee association."

Appellee association introduced evidence to show that the association was duly organized as set forth in the petition; that appellant, Rowland, signed, executed and delivered one of the applications for membership in the association and one of its standard marketing agreements exactly like the one filed as an exhibit to the petition, and was, therefore, a member of the association at all times mentioned in the petition; that the organization committee provided for and named in the agreement, signed by appellant, had prepared and executed, and caused to be signed by its chairman, Robert W. Bingham, a statement and report showing that all the conditions precedent, mentioned in the preliminary agreement of members of the association had been fully and completely met and complied with, and that said statement and report so signed by the chairman of the organization committee in accordance with paragraph "D" of section 13 thereof, had been authorized by a resolution properly introduced and passed by the executive committee in regular session assembled at a time when the matter of complying with the preliminary conditions specified in the agreement were under consideration by the organization committee, a copy of which statement and report was filed with and made a part of plaintiff's petition marked exhibit "B." The appellee association offered the statement of the organization committee, signed by the chairman, as evidence, and this, over the objection of appellant, was admitted by the court, and this is regarded by appellant as prejudicial error.

With the foregoing evidence in, and the appellant, Rowland, having admitted that he produced 10,000 pounds of tobacco in the year named, which he failed to deliver to the pool in accordance with the agreement signed by him, the trial court was of opinion and so held that there was nothing to submit to the jury, and, therefore, as a matter of law directed the jury to find and return a verdict for the association. In its last analysis appellant's complaint that the statement of the organization committee, signed by its chairman, Robert W. Bingham, to the effect that 75 per cent of the burley tobacco production in the states named had been signed up before the 15th of November, 1921, as provided in the preliminary agreement, and that all other steps required by the preliminary agreement had been properly and regularly taken, was not established by the introduction of any evidence at the trial, or by the statement so signed and filed,

for it was not competent evidence; that such an agreement between parties litigant was invalid and unenforceable because in contravention of an established rule of evidence; that the association, through its organization committee, had fraudulently declared and represented through the signed statement mentioned above that 75% of the burley tobacco production of the district named had been signed up when in truth and in fact a much less per cent only had so signed.

We are of opinion that the statement signed by R. W. Bingham, chairman of the organization committee of the association, was properly admitted in evidence. Parties to a suit may agree that certain relative documents be introduced as evidence and thus make them competent, even conclusive. No rule of evidence was violated by the introduction of this statement. As fully set forth in the association agreement and pleaded in the petition, tobacco growers of Kentucky, Tennessee, Ohio and Indiana, in 1920, were so numerous and the exact amount produced by each so difficult of ascertainment that it was absolutely necessary for the signers of the pool agreement to fix in their contract a definite and certain way of determining when as much as seventy-five per cent of such production had signed the agreement that the matter might be determinable, the plan mentioned was adopted and set forth in the association agreement and was the only practical way of accomplishing this object, and was a matter about which the growers who became members of the association had the power to contract with each other, agreeing to be bound by the result when ascertained by the committee thus selected and constituted by them, when thus signed by its chairman. The appellant and other members of the association, who named and established the organization committee, had the power and right to leave to the judgment of that committee, when signed by its chairman, the establishment of the facts necessary to warrant the membership in becoming an association and the promulgation of the organization under its proposed name and title. The only question is, therefore, whether the membership of the association had the right and power to make such an agreement and to bind themselves to accept the duly executed final statement of the organization committee, made in good faith, to the effect that the necessary preliminary steps had been regularly and properly taken for the organization of the association. No evidence was of-

fered to show fraud in the preparation and execution of the statement. There was nothing unlawful or contrary to public policy in such an arrangement between the signators to the agreement. The contracts in which are generally found such provisions for the ascertainment of facts and the settlement of all questions with respect to facts are known as a construction contract. In such the certificate of the architect or the engineer is usually made binding and final upon both parties as to the quantities of excavation, length of lines or quantity of material. These have been universally upheld. Kalberg v. U. S., 97 U. S. 398; Sweeney v. U. S., 109 U. S. 618; R. R. Co. v. March, 114 U. S. 549; Hamilton v. Longon L. & G. Co., 136 U. S. 242; Hamilton v. Home Ins. Co., 137 U. S. 370; R. R. Co. v. Price, 138 U. S. 185; U. S. v. Gleason, 175 U. S. 588; Merrell Ruckgaber Co. v. U. S., 241 U. S. 387. It was not only the natural but the necessary thing to be done under all the circumstances, the number and diversity of location of the growers and of crops being considered.

It is not seriously insisted by appellant that the clause of the agreement providing liquidated damages, in case of breach, is not enforceable; nor could it be under the existing rule on the subject in this jurisdiction. In the case of Louisville Gas & Electric Co. v. City of Louisville, 191 Ky. 816, we said:

"Our rule is to hold the sum named in the bond 'liquidated damages' where the loss resulting from the breach of the agreement would be very uncertain and evidence of this amount very difficult to obtain, and the fair import of the agreement is that the amount of money named in the bond was specified and agreed upon by the parties to save expense and avoid the difficulty of proving the actual damage, and is not out of proportion to the actual damage sustained." Fiscal Court of Franklin County v. Kentucky Public Service Co., 181 Ky. 245; Scott's Admrs. v. City of Mayfield, 153 Ky. 278; Walton-Wilson Co. v. McKitrick, 141 Ky. 415.

With the Bingham statement in as evidence, a copy of the association agreement filed, and appellant, Rowland, admitting himself to be a member and to have signed the agreement and that he sold his tobacco outside the pool, every fact was established from which the legal conclusion follows that appellant Rowland had violated the agreement, was subject to the assessment of liqui-

dated damages of five (5c) cents per pound on the tobacco sold outside the pool in accordance with the terms of the pool agreement, and was also liable to the assessment of damages to cover costs and attorney fees incurred by the organization and necessarily incident to and arising out of the litigation which the breach of the contract by appellant, Rowland, precipitated.

We, therefore, conclude that the trial court properly directed the jury to find and return a verdict for the association, as was done.

In view of what has been said, it becomes unnecessary to discuss appellant's complaint of the jury based upon implied bias arising from membership in appellee association of certain of the panel. The verdict being directed by the court it did not matter who composed the jury.

No error appearing to the prejudice of the substantial rights of appellant, the judgment is affirmed.

Judgment affirmed. Whole court sitting and concurring.