## Dotson, et al. v. Big Sandy Coal & Coke Company, et al.

(Decided November 24, 1925.)

### Appeal from Floyd Circuit Court.

1. Vendor and Purchaser—Purchaser, with Full Knowledge of Outstanding Claims, Merely Acquires such Rights as Owner has, Even though Purchase was Not Collusive.—Where circumstances show that purchaser had full knowledge of outstanding claims against property, even if his purchase from owner was not collusive, he acquired only such rights as owner had to property.

2. Contracts—Proper Interpretation of Contract of Doubtful Meaning Determined by Conduct of Parties.—Where parties to contract of doubtful meaning have given it practical construction by their conduct, such construction is entitled to great, if not controlling, weight, in determining its proper interpretation.

3. Mines and Minerals—Conduct of Parties Held to Show that Contract for Purchase of Mineral Rights was Intended to Apply only to Portion of Tract Contained in Original Option.—Where option was given for purchase of mineral rights on certain tract of land, and option was exercised on only portion thereof because of conflict in title, it was held that conduct of parties was such as to show that contract did not embrace more than part on which option was exercised.

4. Mines and Minerals—Evidence Held Insufficient to Establish Fraud and Mistake in Making of Deed to Property Without Reserving

Mineral Rights.—Where option for purchase of mineral rights in tract of land was exercised as to only portion thereof, and owner had later sold balance without reserving mineral rights in deed, it was held that evidence was insufficient to establish fraud and mistake in making of later deed without reservation.

5.   Reformation of Instruments—Evidence Must be Such as to Establish Fraud or Mistake Beyond Reasonable Controversy to Reform Executed Contract.—To reform an executed contract on ground of fraud and mistake, evidence must be clear and convincing, or such as to establish fraud and mistake beyond reasonable controversy.

6.   Mines and Minerals—Assignor of Purchaser of Mineral Rights Under Option Held Entitled to Deed Conveying Minerals.—Where option for sale of mineral rights in tract of land was exercised as to portion thereof, held that evidence showed that option was accepted to extent of minerals in tract, and that assignor was entitled to deed conveying minerals.

C. B. WHEELER for apellants.

B. F. COMBS for appellees.

OPINION OF THE COURT BY JUDGE CLAY—Affirming.

On June 16, 1902, Lewis M. Dotson, Jr., in consideration of the sum of $25.00 in hand paid, executed to A. J. May an option giving him the exclusive right to buy at any time within two months from the date thereof, at the price of $6.00 an acre, all the minerals underlying a tract of land in Floyd county supposed to contain 800 acres, "and adjoining the lands of the following persons, to-wit: F. A. Hopkins, John G. Johns, Josie D. Harkins and Mrs. A. J. Wright and Thomas D. Calhoun." The contract gave May the privilege of extending the option for four months upon the payment of $600.00, to be credited on the purchase price. The land was surveyed and found to contain about 654 acres. Of this 211 acres lay beyond the line claimed by Josie D. Harkins. The time for closing the option seems to have been extended, and a short time thereafter May paid Dotson about $2,700.00 for the remaining 442.7 acres.

On November 10, 1906, Dotson conveyed the surface of the 442 acres to A. J. Wright for $4,600.00 by a deed which excluded the mineral rights theretofore conveyed to A. J. and S. D. May, and Wright still retains the title.

The minerals were afterwards conveyed by the Mays to the Big Sandy Coal & Coke Company.

On November 19, 1906, Dotson, in consideration of $3,100.00, or about $11.00 per acre, sold the remaining 211

acres of land to John M. Goodman by deed which did not except the minerals.

On February 14, 1911, Goodman conveyed the 211 acre boundary to A. J. Wright and Martha Wright. In a subsequent lawsuit between Wright, Goodman and Josie D. Harkins, it was adjudged that Mrs. Harkins had no title, her claim having been defeated by limitation and actual adverse possession.

On September 14, 1906, Dotson brought this action against S. D. May and the heirs of A. J. May to recover the balance of $1,210.00, with 6% interest from June 16, 1902, on the theory that the option embraced the minerals in the 211 acres which had been conveyed to Goodman and by Goodman to the Wrights. It was alleged in the petition that the writing "was accepted by A. J. May within the time specified in it and the writing copied and filed herein became a binding contract between plaintiff and A. J. May for the sale of the property."

After the suit had been carried on the docket for several years the Big Sandy Coal & Coke Company filed an intervening petition setting up its right to the premises and asking that the deed from Dotson to May, which it alleged had been lost, be supplied and the mineral contract enforced.

It also averred its willingness to pay the remainder of the consideration as prayed for by Dotson in case the court was of the opinion that the contract with May covered the minerals in the 211 acres and the Wrights' claims thereto were defeated. Later on, the same company filed a cross-petition making A. J. Wright and Martha Wright parties defendant.

The Wrights filed an answer, counterclaim and cross-petition, asserting title to the minerals in the 211 acres by virtue of the deeds from Dotson to Goodman and from Goodman to them, but asking relief against Goodman and Dotson in case the court was of the opinion that the minerals did not pass by the conveyance.

In an amended reply Dotson attempted to plead that by fraud or mistake of the draftsman preparing the deed to Goodman the deed was so written as to include the coal and minerals, when in fact, by the agreement of sale, the coal and minerals should have been excluded. He further charged that Goodman and the Wrights knew at the time the deeds were made that the minerals had theretofore been optioned to the Mays. He further charged that the Wrights fraudulently procured the writing of the

deeds so as to include the minerals and that he did not know the deeds were so written when he executed same.

After the case had been pending for about fourteen years, and just before the trial, R. R. Evans filed his petition to be made a party and set up a claim to all the minerals in both tracts of land on the ground that he was an innocent purchaser for value. He alleged that the contract between Dotson and May was an option and not a sale and that the option had never been exercised and no deed had been made, and asked that his title be quieted. At the same time Dotson filed an amended petition in which he supported the claim of Evans.

On final hearing the court adjudged that the option included only the minerals in the 442 acres and not the minerals in the 211 acres, and that the Big Sandy Coal & Coke Company was the owner of the minerals in the 442 acres and entitled to a deed, which the master commissioner was directed to execute on behalf of Dotson. It was further adjudged that A. J. Wright and Martha Wright were entitled to the lands sought in their counterclaim and cross-petition, and their title thereto was quieted. Accordingly, Dotson's petition was dismissed with costs, and he and Evans were enjoined from setting up any claim or title to the property involved. From that judgment Dotson and Evans have appealed.

Evans' claim may be summarily disposed of. He asserts title as an innocent purchaser from Dotson by deed dated June 4, 1919. His claim that he purchased the minerals for value and without notice is not supported by any evidence whatever. On the contrary, all the circumstances point unerringly to the conclusion that he purchased with full knowledge of all the outstanding claims. Therefore, even if his purchase from Dotson was actual and not collusive, he merely stepped into Dotson's shoes and acquired only such rights as Dotson had to the property in question.

It appears that Walter S. Harkins was the attorney and agent for the Mays and made the trade for the minerals with Dotson. According to his evidence his wife claimed a tract of land that lapped on or around through one side of the boundary claimed by Dotson. He declined to purchase from Dotson the minerals in that portion of the land that his wife claimed and for that reason the lands in the option were described as bounded by the adjoining landowners, including Josie D. Harkins. When the land was surveyed it was found to contain approxi-

mately 442 acres, and the trade was settled on that basis and the purchase money paid. The other tract of 211 acres, which lay in what is known as the Josie D. Harkins' line, was not included in the option. On the other hand, Dotson claims that he sold the Mays the minerals in all his land. At that time Mrs. Harkins had no line there that he knew of. Her land that the writing called for was on the head of the branch. Harkins claimed some land that was covered by a patent under the name of Alec Martin. He drew the contract so as to extend his claim. He afterwards sold to A. J. Wright and reserved the minerals in the 442 acre tract. He afterwards sold to Goodman. At the time he made the sale to the Mays he had a conversation with A. J. Wright and A. J. Wright knew that he had sold the coal in the entire property. At the time he sold to John Morgan Goodman he wanted more for the place than John was willing to give. John said if the mineral was not sold he would not mind giving more, but they might come in and go to work on it and it would not be worth more if they commenced work. When the deed was drawn he owed John G. Johns $205.00. George Archer, who drew the deed, asked if there was anything he wanted reserved and he told Archer that he wanted to reserve the minerals. At that time he owed Johns $205.00, and Joe Davidson was by and spoke to him about the $205.00. At that time Goodman agreed to have the clause put in the deed excluding the minerals, "and said he would pay it and discount that off of it, what he was owing him." On being asked why the clause was left out of the deed he said he could not explain it and that the deed had been tampered with some way or other. He asked Goodman if he had had the minerals excluded and he said he didn't. Goodman testified that at the time he purchased the 211-acre tract he knew that the minerals had been sold and that A. J. Wright at the time of his purchase knew they had been sold. On the other hand, A. J. Wright denied any knowledge of the fact that the minerals in the 211-acre tract had been sold and claimed that he relied on the deed from Dotson to Goodman, which was of record, and did not except the minerals.

In the option Josie D. Harkins is mentioned as one of the adjoining landowners, and the first question to be decided is whether the land was to extend to her land in the head of the branch as claimed by Dotson, or to her line which she claimed under the Martin patent. It may

be conceded that there is direct evidence as well as some circumstances tending to support the position of Dotson, but there are other circumstances of such a convincing character that we cannot accept that view of the case. In the first place, Dotson admits that Harkins talked about his claim in there, and on being asked if he drew that contract so as to extend to his claim he answered, "Yes, that is the way he drew the contract." In the next place, the land was surveyed and the minerals in the 442-acre tract, which ran to the line claimed by Josie D. Harkins, were paid for. After this Dotson conveyed the 442-acre tract and reserved the minerals, and then sold the 211-acre tract without any reservation of the minerals. Not only so, but when he sued Goodman and Wright to recover the balance of the purchase price of the 211-acre tract which he had sold he did not then claim that there was any reservation of the minerals, but alleged that the property itself had been sold and sought a lien on the entire tract. Though claiming that Archer was told when the deed to Goodman was drawn to reserve the minerals he admits that Goodman told him that the minerals had not been reserved. If this occurred before the deed was drawn, then Dotson knew that no mistake had been made. If it occurred immediately afterwards, it is strange that he did not then protest or take any steps to have the deed reformed. Where the parties to a contract of doubtful meaning have given it a practical construction by their conduct, such construction is entitled to great, if not controlling, weight in determining its proper interpretation. 13 C. J. 546; Beckette v. Kinner, 167 Ky. 335, 180 S. W. 530; Kimsey v. Posey, 148 Ky. 54, 145 S. W. 1121; Lowrey v. Hawaii, 206 U. S. 206, 27 S. Ct. 622, 51 L. Ed. 1026. Here the parties not only closed the transaction on the basis that only the minerals in the 442 acres were included by the contract, but Dotson's subsequent conduct in selling the 211-acre tract without excepting the minerals is strongly persuasive of appellees' contention that the contract did not embrace the minerals in the 211-acre tract. We may also add that even if the contract should be construed to include the minerals in the 211-acre tract appellee should not be required to accept and pay for the minerals until it was adjudged that they were not the property of A. J. Wright. To defeat his claim it was necessary to show that the failure to reserve minerals in the deed from Dotson to Goodman was the result of fraud or mistake, and

that he purchased with notice thereof. To reform an executed contract on the grounds of fraud and mistake, the evidence must be clear and convincing or such as to establish the fraud and mistake beyond reasonable controversy, Johnson v. Elkhorn Gas Coal Mining Co., 193 Ky. 585, 236 S. W. 1041; and it is at once apparent that the evidence falls far short of the required standard. '

Not only does the evidence show that the original option was accepted to the extent of the minerals in the 442 acres and the entire consideration paid, but Dotson in his original petition pleaded that the option was accepted and became a binding contract. That being true, the court did not err in holding that the Big Sandy Coal & Coke Company was entitled to a deed conveying the minerals in the 442 acres.

Judgment affirmed.