# Kentucky Lumber & Millwork Co. v. George H. Rommell Company.

(Decided Nov. 30, 1934.)

HENRY G. BEDINGER for appellant.
A. C. VAN WINKLE for appellee.

372

OPINION OF THE COURT BY JUDGE PERRY—Affirming.

This is an appeal from a judgment of the Jefferson circuit court (chancery branch) in an action brought under the Declaratory Judgments Act (Civ. Code Prac. sec. 639a—1 et seq.) for a declaration of the rights of the parties under a contract to furnish millwork and under which, as construed, it was declared and adjudged that the appellee, George H. Rommell Compay, should recover of the appellant damages in the sum of $4,410 with interest and costs for its breach.

It appears that the appellee, George H. Rommell Company, was a building contractor and as such had contracted with the Board of Education of Louisville to construct a city school building according to certain agreed plans and specifications. Further, having so contracted, it let to the appellant a subcontract to furnish and install in the building, as its construction advanced, certain wooden millwork called for by the building specifications at a price of $18,000. After so contracting, the appellant proceeded to manufacture in its own lumber and millwork plant the special woodwork therefor as required, up until July, 1933, when its one planing mill was totally destroyed by fire. The appellant thereupon, for the purpose of avoiding delay in construction of the building, arranged with the Anderson Manufacturing Company of Louisville to immediately fulfill its contract obligation with the Rommell Company, by manufacturing and furnishing from its own mill plant the specified finished woodwork as required. Such arrangement continued until the following September, when appellant notified the Rommell Company that, because of the destruction by fire of its mill plant in the prior July, it had been deprived of the means of performing its contract to manufacture and install this millwork; that, by reason of such fortuitous loss of its mill, it was excused from further performance of the contract; and that for such cause both parties were released from liability thereunder.

The appellee not agreeing with appellant's position or claim in this and acting upon its refusal to further perform its contract, it arranged with the Anderson Manufacturng Company to fulfill appellant's unfinished contract by manufacturing and delivering from its mill the millwork covered by the appellant's contract. This subtitution of the Anderson Manufacturing Company for the appellant, to fulfill the latter's contract, was secur-

ed at an additional cost of $6,000, and as to the payment of which extra cost a controversy has arisen between the contracting parties as to whose is the liability therefor.

For the determination of this question, the appellant instituted its action, as stated, seeking a construction of their contract of October, 1932, and for a declaration of the rights of the parties thereunder.

Upon submission of the cause upon the pleadings, agreed stipulation of facts and additional proof taken, it was adjudged and declared by the court that the Rommell Company was entitled under the contract to recover this additional amount of $6,000 paid the Anderson Manufacturing Company for fulfilling appellant's contract (which it had refused to carry out), subject to a credit thereon by the amount owing it, at the contract price, for such millwork as it had made and delivered the appellee prior to its September notice disclaiming further obligation under the contract to perform. In so holding, the court construed the parties' contract as one obligating plaintiff to furnish the specified millwork as required at the agreed price of $18,000 and that the continued existence of the appellant's mill was not by the parties made a condition of its performance and that neither from the language of the contract nor the facts and circumstances surrounding its making could it be inferred that it was within the contemplation of the parties to regard the subsequent continued existence of appellant's particular mill as being a necessary means for performing the contract or as an implied subsequent condition thereof. The learned chancellor, in his written opinion announcing the grounds or legal principles upon which his judgment was based, states, in substance, his conclusion to be that if it were in contemplation of the parties that the appellant was to furnish from its mill, and only from its mill, the contracted millwork, the destruction of the mill might then excuse its further performance; but that, in order to find such a condition existed within the contemplation of the contracting parties, the court must read it into the contract, which was not here to be done, as it was evident that such an implied condition was not contemplated by the appellant company for the reason that, after the burning of its mill, it went ahead, on its own initiative and responsibility, and had another

planing mill finish in part the contract it had with the Rommell Company, at its own expense.

After a careful study and consideration of the record and the able and exhaustive briefs submitted alike by opposing counsel herein, we are inclined to concur in the conclusion announced by the trial court.

By the provisions of the contract entered into on October 28, 1932, the appellant expressly thereby agreed and undertook to furnish ''all labor and material necessary to complete, and to perform in a good workmanlike manner all millwork delivered to the building according to plans and specifications and addenda pertaining to the erection of Junior and Senior High School, Second and Lee, for Board of Education,'' and further ''to promptly pay for all labor performed and all material used or furnished in completing said work and carrying out said contract.''

It will be noted that while the appellant does hereby undertake to furnish all labor and material necessary to complete and perform in a good workmanlike manner all millwork required, it is nowhere indicated by the terms of the contract that the appellant in so furnishing this labor and millwork was to be confined to its own one manufacturing plant as the one specific or exclusive means or agency through which it was to render performance, or that the continued subsequent existence of its own one millwork factory was, when contracting, contemplated by the parties as the single or necessary specific agency through which this millwork could alone be satisfactorily furnished. The evidence clearly shows that, while under the contract specifications for this work some of it was to be specially made in accordance therewith, nevertheless this specified millwork not only could be made in and was obtainable from the one factory of appellant but was also obtainable from other local millwork industries in Louisville, to one of which (the Anderson Manufacturing Company) the appellant, when its mill was destroyed by fire, had turned and arranged to have its contract properly and acceptably performed by it for the Rommell Company. It is apparent that had appellant's contract, as construed by it, been in its character one strictly for a personal service, calling for the manufacture and delivery of this millwork exclusively by its own milling plant and as the special handiwork of its own employees, it could not, upon the event of its

later fortuitous loss of its mill in July (without fault on its part), have turned to the Anderson Manufacturing Company for a substituted performance by it of its exclusively personal service contract. It is an enlightening fact, here helpful in our determination of what was the character of this contract, within the contemplation of the parties when making it, i. e., as to whether or not the continued existence of appellant's mill, if thought of, was considered by them to be an implied subsequent condition of its performance, when it appears that upon its loss, the contemporaneous construction given by the appellant to this contract was that it was not such a personal service contract, but rather one only obligating it to furnish this certain millwork, which it had contracted to furnish, wherever or however obtained by appellant, or which might—even though elsewhere made and obtained—be yet furnished by it in satisfactory compliance with the terms of its contract. It is thus manifest that the continued existence of appellant's mill was not regarded as an implied subsequent condition of the contract's performance, as the appellant, after the destruction of its mill in July, continued to acceptably perform its contract to furnish this millwork through the agency of the Anderson Manufacturing Company, until some time in the following September, when it then first claimed that the earlier loss of its planing mill had served to exonerate it from the further performance of its contract, upon finding that such substituted mode of performance involved an increased cost to it over that required for the millwork when made and furnished from its own factory.

In the light of these undisputed facts and circumstances shown by the parties' agreed stipulation and testimony, can it be reasonably contended that by it they are shown to have contemplated that their contract so necessarily required for its proper performance the continued existence of appellant's factory that, upon its fortuitous destruction, making its longer use unavailable for furnishing the contracted millwork, the promisor was thereby excused from performance, where he has, as we are led to conclude, expressly contracted to furnish this millwork independently of the continued existence of his mill or, that is to say, has himself assumed the risk of its continued existence? The mere fact that the contractor could have more economically and profitably performed the contract, while utilizing

to such end the labor of its own employees and the instrumentality of its own plant as its preferable and customary mode and manner of carrying out its contracts, is not in itself sufficient reason for concluding that the sole or exclusive use thereof or the continued existence of the mill for such use was within the contemplation of the contracting parties made an implied condition of appellant's performance. The parties' contemporaneous construction of their contract, manifested upon the loss of the mill, was that they did not contemplate their contract as one having such an implied condition. Even were this contract here involved one of doubtful meaning and interpretation as to this, which we question, still the conduct of the parties is so significant as to otherwise determine, when tested by the well-established rule governing the interpretation of ambiguous and uncertain contracts, which directs that that construction of it which the parties themselves, when operating under it, have given it should be adopted. Consolidation Coal Co. v. Gibbs, 190 Ky. 717, 228 S. W. 416; Dotson v. Big Sandy Coal & Coke Co., 211 Ky. 384, 277 S. W. 474; Easter v. Johnson, 217 Ky. 639, 290 S. W. 505; Morris Shoe Co. v. Coleman, 187 Ky. 837, 221 S. W. 242. Additional to the force of this stated rule of contemporaneous construction, which we regard as here applicable, the rule as to when the continued existence of a particular instrumentality is to be regarded as an implied condition of the contract is further stated by Professor Williston in section 1935, volume 3, of his work on contracts to be that "not every kind of impossibility will excuse a promisor from liability for breach of his promise, even though he does not expressly undertake the risk of impossibility." After naming the three classes of cases where performance is prevented, by change of law, by death or illness of one of the parties to a contract for personal service, or by the destruction of the subject-matter of the contract, wherein it is generally agreed that the promisor will be excused unless he expressly agreed in the contract to assume the risk of the performance, he states that "there is certainly also a fourth class of cases toward which the law seems to be tending, though standing on more debatable ground, where the promisor is excused because of subsequently arising impossibility due to the failure of some means of performance contemplated but not contracted for." This last-named exception, ingrafted upon the early law

rule, that impossibility of performance constituted no excuse for breach of the contract, is further discussed in section 1948 of the work, dealing with "the destruction of an essential specific thing" as constituting an excuse for nonperformance, in which it is said:

> "Not only where a specific thing is itself to be sold or transferred, but wherever a contract requires for its performance the existence of a specific thing, the fortuitous destruction of that thing, or such impairment of it as makes it unavailable, excuses the promisor *unless he has clearly assumed the risk of its continued existence*. A contract to manufacture goods in a particular factory is discharged by the destruction of the factory * * *" (Italics ours.)

Here the contract provided only for furnishing the mill-. work, not for its making by any special agency.

So, for the reasons hereinabove given, we are of the opinion that under the contract here involved it was not contemplated by the parties that the contract called for the manufacture of the millwork in appellant's particular factory, so as to bring this contract within the rule and discharge appellant by the subsequent destruction of its specific mill, for even "had the parties carefully considered all the possible contingencies, they would doubtless have agreed that such a contract was just, but their minds were concerned only with the making of a contract which they regarded as certain of performance, and they therefore used words which clearly imposed an absolute obligation, and which have always been regarded in that light at law. To construe them otherwise would be a clear violation of the meaning of words." 15 Harvard Law Review, 418. Also to like effect, see statement of this rule as to the "standard of interpretation where there is integration," as to how the same is influenced by the contemporaneous construction of the contract made by parties, in sections 230 and 235, Restatement of the Law of Contracts. To like effect also has this rule been so announced and applied by this court in the case of Niles v. Meade, 189 Ky. 243, 224 S. W. 854, that the failure to perform the stipulations of an oil exploration contract containing a strict time limit was held not excused by the obligor's being disabled to perform them because of casualties arising without fault upon his part, the conditions of the contract not being impossible of performance when

378

undertaken. Also, in Pensylvania Fire Ins. Co. v. Cullin, 202 Ky. 107, 258 S. W. 965, 967, it was held that:

> "When performance becomes impossible subsequent to the contract, the general rule is that the promisor is not thereby discharged."

See further Stevens & Elkins v. Lewis, Wilson, Hicks Co., 170 Ky. 238, 185 S. W. 873; Runyon v. Culver, 168 Ky. 45, 181 S. W. 640, L. R. A. 1916F, 3.

We are thus led to conclude from the above-expressed considerations and reasons that appellant's contract was here one wherein the parties did not contemplate the contingency of the subsequent destruction of appellant's mill as a fortuitous event which would render impossible its performance of its contract or as one which would excuse such performance. Rather it was one whereby it undertook an absolute obligation to furnish the contracted millwork in any event, whether it was manufactured by its own milling plant or would have to be obtained in the market from the mill of another. Such being our construction of the contract, it results that the later destruction of appellant's mill did not serve to excuse it from performing its unconditional contract to furnish appellee the required millwork. From this it follows that, having breached its contract without exoneration from liability therefor, the learned chancellor properly decreed its payment of damages therefor.

The judgment is therefore affirmed.