## City of Scottsville v. Hewitt.

(Decided June 6, 1930.)

F. R. GOAD and N. G. GOAD for appellant.

N. F. HARPER for appellee.

OPINION OF THE COURT BY JUDGE DIETZMAN—Affirming.

On June 8, 1922, the appellee who was the owner of a large farm conveyed three-fourths of an acre of it to the appellant. There was located upon the ground conveyed one large spring and one small spring. The appellant bought the ground, and these springs as a source of water supply for its municipal waterworks. The appellee was paid the sum of $1,000 cash for the land, and in the deed it was provided: ''As a further consideration for said conveyance, party of the second part (appellant) shall install a valve and water trough at or near the large spring on the real estate conveyed for the personal use of the party of the first part (appellee) in obtaining farm and family water supply.''

The ground conveyed was flat and somewhat marshy. It lay near a branch which in times of heavy rains overflowed and flooded the springs. In order to keep the water supply pure, the appellant dug around the springs and down about two feet to rock, and then erected around and over the springs concrete drums or houses. From the springs as thus protected, the appel-

lant piped the water by gravity to a pumping station which hoisted the water into a stand pipe from which the city mains were supplied. At the same time the concrete houses were erected, the appellant installed a concrete trough on the ground conveyed, and ran a pipe from the large spring to the trough. There was no valve installed but, as the purpose of the valve was only to conserve the water supply, the failure to install the valve was no hurt to the appellee, and he did not and does not complain of that failure. After a short while, for some reason not known, the water supply from the springs, though still as abundant as when the appellee conveyed it, did not rise as high in the concrete houses as it did at first, the result being that the pipe which fed the concrete trough was above the surface of the water, and hence the water supply of the appellee was cut off. He made complaint and the appellant installed another trough and another pipe, but the record is not clear whether appellee ever obtained any water from this second installation or not. Whether he did or not, the water supply very quickly ceased, because the water in the concrete houses would not rise to the level of the feed pipe. Appellee made complaint again to the appellant, but, being of the opinion that it could not at any reasonable expense supply appellee with water in a concrete trough on the plot conveyed appellant refused to do anything further except to offer to put in a trough upon a part of the remainder of appellee's farm, which offer the appellee declined. Thereupon appellee brought this suit against the appellant to compel it to furnish him with a water supply upon the land conveyed for his farm and family use and for damages for the failure of the appellant to furnish him that water supply in the past. On final hearing, the court awarded the appellee damages in the sum of $50 and also an injunction requiring the appellant to furnish and supply the appellee with water at or near the big spring on the land conveyed in sufficient quantity for family and farm use and a trough for the use of appellee's stock. From this judgment, this appeal is prosecuted.

As grounds for reversal, appellant first insists that, by the covenant in the deed which the appellee relies upon, it was under no obligation to furnish any water whatever to the appellee, but that all it was required to do was to install a valve and water trough at or near the big spring. This view of the covenant is too narrow and

technical. As stated in 13 C. J. 558: "A contract includes not only what is expressly stated but also what is necessarily to be implied from the language used, and terms which may clearly be implied from a consideration of the entire contract are as much a part thereof as though plainly written on its face."

Thus in Proctor v. Union Coal Co., 243 Mass. 428, 137 N. E. 659, the plaintiff sold to the defendant a portion of a farm he owned bordering upon the shore of Whalom Lake. The consideration was $1,500 in cash and an agreement about ice which was the subject matter of the suit. By that agreement the plaintiff was granted "the right and privilege of access across said land to the said company's icehouses on the shore of Whalom Lake, and the privilege of taking therefrom such broken ice as the said Proctor may need for his own use in any manner or for any purpose of his own, it being understood that the privilege so granted does not allow the said Proctor to take ice for the purpose of selling or giving it away."

It further provided: "At such time or times as said Proctor may need ice for his own necessary purposes and when there may be no broken ice to be had, the said Proctor may have other ice. It is understood and agreed that all ice taken by the said Proctor hereunder shall be taken from the premises by him and that the said company will deliver no ice at any other point than at said icehouses."

In discussing the scope of this agreement, the court said: "The defendant did not in express terms promise to cut and store any ice; but such co-operation was essential to carry out the agreement, and was implied therein." For other cases, see Decennial Digests, title Contracts, sec. 168.

In the instant case the plain intent of the covenant involved is that the appellant was to furnish a water supply for family and farm use in a trough located on the lot conveyed. Indeed, the appellant's own witness, the mayor of the city, at the time this deed was made, admits that this was the purpose of the covenant. It is next argued that the failure of the appellant to furnish the water was due to an act of God whereby the surface of the water was lowered, for which reason it is discharged from further compliance with the covenant. In 13 C. J. 641, it is said: "The general rule is that an absolute

undertaking is not discharged by a subsequent act of God rendering performance onerous or even impossible.'' Cf. Pennsylvania Fire Ins. Co. v. Cullin, 202 Ky. 107, 258 S. W. 965.

In the instant case, the spring has not been destroyed. The amount of the water coming from it is as abundant now as it ever was, and has been ample for every need of the city and its inhabitants, including even extravagant needs, except that during one very dry summer the use of the water for sprinkling lawns had to be curtailed. Even if the performance of its contract, which is absolute in its terms, is now more onerous, appellant cannot escape the duty of that performance on the argument now advanced.

Appellant is not excused from its obligations to furnish water because the appellee refused to permit it to install a trough on appellee's farm. Aside from the fact that by its contract appellant agreed to install the trough on the land conveyed, and conceding arguendo that, if appellee wishes to compel the appellant to furnish the water, he ought in equity and good conscience to permit the trough to be installed on his farm in order to save the appellant great expense in furnishing him a supply on the land conveyed, yet the evidence by no means satisfactorily establishes that the installation of the trough on appellee's farm will have any better results than the former installations of the troughs on the land conveyed. Indeed, there is positive evidence that it will not work as good as the troughs heretofore installed and which have failed, since the rest of appellee's farm lies higher than the land conveyed, and the water would not flow by gravity to any trough installed where appellant wishes to place it.

Appellant contends that to comply with the injunction will put upon it a very great expense, for which reason the appellee should be relegated to his suit for damages and the appellant should not be required to furnish the water supply. Appellee's proof indicates that a water supply can be furnished him from the pressure system of the appellant at a cost from $200 to $300. Appellant's proof is that it will cost about $800 to do this. Of course, appellant is not compelled to furnish appellee a supply from its pressure system, but it is compelled to furnish appellee *a* water supply on the land conveyed. That is all the court's injunction requires it to

do, and, if it can work this out in any other way than by piping it from the pressure supply, it is at liberty to do so.

The judgment is affirmed.