COVE IRRIGATION DISTRICT, APPELLANT, *v.* YELLOW-STONE DITCH CO. ET AL., RESPONDENTS.

(No. 6,762.)

(Submitted September 11, 1931. Decided September 21, 1931.)

[3 Pac. (2d) 280.]

*Messrs. Johnston, Coleman & Jameson,* for Appellant, submitted a brief; *Mr. H. J. Coleman* argued the cause orally.

*Mr. George W. Pierson,* for Respondents, submitted a brief and argued the cause orally.

MR. JUSTICE ANGSTMAN delivered the opinion of the court.

In this action a general demurrer to the complaint was sustained. Plaintiff, declining to amend its complaint, suffered judgment of dismissal to be entered, from which it appealed.

From the complaint it appears that the Yellowstone Ditch Company was organized as a corporation in 1893; that in 1906 it was the owner of and operating an irrigation canal diverting waters from the north bank of the Yellowstone River in Stillwater county for irrigating lands situated easterly from the point of diversion; that the individual defendants are stockholders of the Yellowstone Ditch Company and the owners of land aggregating 3,100 acres irrigated by means of the canal, each stockholder being entitled to that proportion of all the water carried in the canal which his stock bore to the total outstanding stock; that in 1905 the Cove Ditch Company was incorporated for the purpose of appropriating, transporting and selling the waters of Yellowstone River for beneficial uses to its stockholders owning lands north of the Yellowstone River and east of the lands owned by the individual defendants; that on January 25, 1906, the Yellowstone Ditch Company conveyed to the Cove Ditch Company its irrigation ditch or canal to enable the latter company, by the enlargement and extension of the canal, to conduct the water needed for its stockholders through it, reserving the right in the Yellowstone Ditch

Company to the use of the waters under the terms and conditions of a written contract attached to and made a part of the complaint; that under the contract the Cove Ditch Company agreed to maintain the canal; that acting under the agreement the Cove Ditch Company enlarged the canal and extended it eastward twenty miles to irrigate the lands of its stockholders; that thereafter a bar and islands were formed in the channel of the Yellowstone River by a gradual deposit of sand and gravel at the point of intake of said canal, and the main current of the river flowed on the south side of the islands or bar; that by the flowing of the river on the south side of the islands and bar, over a period of years, it cut and deepened its bed so that the portion of the river tapped by the canal became a high-water channel, capable of furnishing water for the canal only during the high-water period, which usually terminated between the first and fifteenth days of July, resulting in damage and injury to the crops of the stockholders of the Cove Ditch Company and the Yellowstone Ditch Company; that to insure an adequate supply of water in the canal during the entire irrigating season it became necessary to change the location of the headgate to a point about one-quarter of a mile west of the existing headgate and to construct approximately 4,300 feet of new ditch; that in 1922 the stockholders of the Cove Ditch Company organized and created the plaintiff Cove Irrigation District, embracing within the district the lands owned by the stockholders of the Cove Ditch Company, but not those owned by the stockholders of the Yellowstone Ditch Company; that by conveyance plaintiff has succeeded to the rights of the Cove Ditch Company in the canal and irrigation system; that in 1923 plaintiff constructed a new headgate about one-quarter of a mile up the river and constructed about 4,300 feet of new ditch at a cost of about $45,000; that this expenditure has made an adequate supply of water available for the full irrigation season which was made use of each year by the individual defendants, and that the defendants have failed and refused to contribute any part of the cost of the work.

By way of conclusion the complaint avers that the expense of reconstruction of the canal and headgate was not contemplated by the written agreement with the Cove Ditch Company and that defendants are entitled to take such water only as it was possible to get into the canal by means of the headgate as originally constructed, but that they claim the right to take advantage of the reconstruction and make use of water during the entire irrigation season of each year. It is further alleged that the canal as reconstructed will carry sufficient water for the needs of all the individual defendants as well as for all persons owning lands within the Cove Irrigation District, and plaintiff by its complaint offers to permit the defendants to use water from the canal during the entire irrigation season upon the condition that they contribute their proportionate shares of the expense of the reconstruction work.

The prayer is that it be decreed that defendants are entitled to water only at such periods of the irrigation season each year when it would have been possible to divert water into the canal as originally constructed and maintained, and that they be enjoined from using water at any other time.

The sufficiency of the complaint and the propriety of the judgment appealed from depend upon the terms of the written contract between the Cove Ditch Company and the Yellowstone Ditch Company.

So far as bearing upon the questions here involved, the contract of January 25, 1906, contains these provisions:

"That the party of the second part [Cove Ditch Company] shall * * * furnish to the party of the first part [Yellowstone Ditch Company] or to its several stockholders in proportion to their respective interest in the stock of said company such an amount of water as the said canal now carries, the amount of said water to be determined by a measurement hereafter to be made and in the manner hereinafter stated: provided, however, that nothing herein contained shall be construed as a conveyance of the water right of the party of the first part; and provided, further, that the said party

of the second part shall only be required to furnish such water during the irrigating season of each and every year hereafter; and provided also, that nothing herein contained shall be considered as requiring the party of the second part to furnish the party of the first part the full amount of water herein contracted to be delivered to it when on account of extreme low water in the river it is impossible to carry the requisite amount of water therefor in said canal or when on account of unavoidable accident it is impossible to operate said ditch for the time being. The party of the second part, however, is to use all proper diligence and reasonable care to keep the requisite amount of water flowing in said canal to provide the party of the first part with water at all times and to repair any and all breaks or damages which may be done to said ditch by unavoidable accident or otherwise. The party of the second part is to enlarge said canal and the headgate thereof at its own proper expense during such season of the year as will not in any manner interfere with the use of the water thereof by the party of the first part at any time during the irrigating season, and further agrees at all times to do and perform all necessary work and furnish all necessary material in the repair of said ditch from year to year.

''It is further understood and agreed between the parties that the party of the second part shall, subject to the conditions of this agreement, have at all times the full and complete control of said canal after it shall have enlarged the same and shall at its own expense keep a ditch walker on said ditch whose duty it shall be to see that the water agreed to be furnished to the party of the first part shall be turned out to the stockholders thereof in such quantities as the said stockholders shall be entitled respectively, and according to their respective shares of stock in the party of the first part. The said party of the second part also agrees to so reconstruct and to operate said canal that the level of the water therein shall at its normal height rise to the same elevation in said canal as it rises at the present time and so that it will flow through the headgates of the stockholders of the party of the

first part as now located or as they may be located at any time prior to the time the party of the second part may commence the enlargement of said ditch or as may at any time hereafter be constructed by the mutual consent of the parties hereto.''

The contract conveys a right of way for the canal sixty-six feet in width, after which appears the following: ''Nothing in this conveyance shall be construed as a transfer of the water right and appropriation of the waters of the Yellowstone River as heretofore acquired by the party of the first part.''

The contract expressly reserved ''at all times and perpetually the right of the party of the first part and of its stockholders to receive from said canal the amount of water belonging to them as hereinbefore stated in this conveyance whenever they shall need or require the same during the irrigating season.'' It also provided that ''the consideration hereof is the continual supply from year to year to the party of the first part by the party of the second part of the amount of water hereinbefore mentioned, and that this conveyance shall be valid only so long as the party of the second part shall substantially comply with its agreement and with the conditions of this conveyance. And upon the failure of the party of the second part to supply said amount of water herein provided for at the time and in the manner provided for herein, the property hereby granted in whatever condition the same may be at the time of such failure as aforesaid shall, together with all the additions, accretions and improvements then revert to and become the property of the party of the first part or its successors and assigns.''

This contract, like any other, must be construed in the light of the circumstances under which it was made (sec. 10521, Rev. Codes 1921), and the intention of the parties is to be pursued, if possible. (Sec. 10520, Id.) So viewing the contract, it required plaintiff's predecessor in interest to furnish to defendants during the irrigating season the amount of water the canal carried at the time the contract was made, excepting in case of extreme low water in the river or on

account of unavoidable accident it became impossible to do so. Neither of these exceptions appears here. There was no unavoidable accident alleged, and the complaint is not grounded upon a claim of extreme low water in the river.

At the time the contract was made the Yellowstone Ditch Company, as appears from the contract, was particularly interested in reserving its water right and in imposing the duty of furnishing the water upon the Cove Ditch Company, without cost to the Yellowstone Ditch Company, as the consideration for the conveyance of the right of way. Stipulations in the contract disclose that the rights of the Yellowstone Ditch Company would be satisfied only by furnishing water during the full irrigation season, excepting when it would be impossible to do so because of extreme low water in the river, or because of unavoidable accident. Also, the contract required the Cove Ditch Company "to use all proper diligence and reasonable care to keep the requisite amount of water flowing in said canal."

While the complaint alleges the conclusion that this was done and that the shortage of water was not due to the failure of the Cove Ditch Company to comply with the terms of its contract, it further alleges that the bar and islands were formed in the bed or channel of the river by the gradual deposit of sand and gravel, causing the current to gradually change over a period of years. There is no allegation of facts tending to show that the Cove Ditch Company, in the exercise of the proper diligence and care, could not have prevented the change in the river channel. If the obligation of the Cove Ditch Company to supply water to defendants became burdensome it had the option of permitting the property conveyed to it by the Yellowstone Ditch Company to revert. Plaintiff, as the successor in interest of the Cove Ditch Company, had the same right. Instead of so doing, plaintiff chose the alternative of changing the point of diversion upstream so as to receive the same water at a higher point. Having done this, rather than permitting the property to revert, we think under the contract defendants are entitled to the benefit of the waters for the full

irrigation season, bearing in mind that the contract imposed the duty upon the Cove Ditch Company of performing all necessary work and furnishing all necessary materials in the  repair of the ditch. The fact that compliance with the contract became more onerous than was contemplated at the time it was entered into does not excuse performance according to its terms. (*City of Scottsville* v. *Hewitt,* 234 Ky. 656, 28 S. W. (2d) 984.)

The court properly sustained the demurrer to the complaint. The judgment is affirmed.

MR. CHIEF JUSTICE CALLAWAY and ASSOCIATE JUSTICES GALEN, FORD and MATTHEWS concur.