COVE IRRIGATION COMPANY, Plaintiff and Appellant, *v.* YELLOWSTONE DITCH COMPANY, Defendant and Respondent.

No. 10140.
Submitted May 9, 1961. Decided June 13, 1961.
362 P.2d 543.

Arnold H. Olsen, Helena, Jones & Olsen, Billings, for appellant. Paul G. Olsen, Billings, argued orally.

Wiggenhorn, Hutton, Schiltz & Sheehy, Billings, for respondent. Ralph Wiggenhorn, Billings, argued orally.

MR. JUSTICE CASTLES delivered the Opinion of the Court.

This is an appeal from a judgment upon pleadings. The pleadings consisted of a complaint, answer and reply. The

parties are mutual irrigation or ditch companies, organized for the purpose of supplying water to their stockholders. For convenience we shall refer to the appellant, plaintiff below, as well as its predecessors, simply as Cove, and the respondent, defendant below, as Yellowstone.

Yellowstone and Cove entered into an agreement dated January 25, 1906. The agreement is part of the complaint. The agreement is a bilateral one, containing mutual and reciprocal covenants. On the part of Yellowstone it is a deed of conveyance of Yellowstone's entire canal and the right-of-way and easement for the canal.

On the part of Cove, the agreement contains numerous promises and covenants as the consideration for the grant of the canal. These promises include: (1) enlarging the ditch; (2) furnishing Yellowstone and its users the same amount of water it had been receiving; (3) doing the necessary maintenance and repair; (4) providing a ditch tender; (5) reconstructing the ditch so as to keep the water level at the same height as before enlargement; and (6) other obligations.

Yellowstone owned the canal. Cove was further removed from the river, the source of the water, and wanted to use the canal by extending it and enlarging it. The obvious purpose of the agreement was to serve Cove's convenience and provide it with a canal and right-of-way which, by enlargement and extension, would accomplish the purpose for which it was organized.

Under this agreement, Yellowstone conveyed its canal to Cove and Cove now owns it. The complaint is one by Cove, the present owner of the canal, seeking to condemn the covenants in its own deed, which covenants were the very consideration paid for the canal.

Another unusual factor appearing in the complaint is that Cove is and has been insolvent and in great financial trouble. Thus a self-confessed insolvent is seeking to condemn property,

which if condemned, would require payment of a substantial sum of money claimed not to be had !

The complaint seeks condemnation of "A full, complete and perpetual easement and right-of-way * * * to acquire the remainder of said rights and interests outstanding * * *."

Keep in mind that complainant Cove is already the owner by purchase of a "full, complete and perpetual easement" ! The complaint refers to "the obligation of a condition subsequent." As disclosed by the agreement, this language refers to the requirement that Cove supply Yellowstone their full measure of water from the canal. This is referred to as a "condition subsequent" because of a provision of the agreement that failure to supply such water shall cause the ownership of the canal to revert to the grantor, Yellowstone. Thus the complaint seeks to condemn the whole and entire canal and right-of-way, without reservation, restriction or condition, leaving the grantor in the deed with nothing.

Boiling the matter down to its bare essentials, the action sought condemnation of the covenants in a deed, the covenants being the consideration for the deed. This is absurd by its statement.

However, aside from the complaint, the brief of Cove indicates a novel, if different, thought as to the purpose of the action. In its brief, Cove frankly admits that it seeks to be relieved of the burden and obligations of the agreement, in some unknown and nebulous manner, so that it would own the canal and spread the cost of the upkeep over all users, both Cove and Yellowstone, as if they were common owners. Cove would, by the simple expediency of condemnation, remove its obligations of its contract.

The appellant specifies error that the court erred in holding that the pleadings did not present a proper case for the condemnation sought.

R.C.M. 1947, § 93-9904, enumerates the kind of property which may be taken in condemnation and includes property

already appropriated to a public use, but adds this proviso:

"* * * but such property must not be taken unless for a more necessary public use than that to which it has already been appropriated."

Section 93-9905 reads as follows:

"Before property can be taken, it must appear:

"1.  That the use to which it is to be applied is a use authorized by law.

"2.  That the taking is necessary to such use.

"3.  If already appropriated to some public use, that the public use to which it is to be applied is a more necessary public use. * * *"

■ Of course, it is conceded that the use to which the property is to be applied is a public use. But what "property" is attempted to be condemned? The Cove Irrigation Company already owns the canal. What they seek to condemn is the obligation to furnish water to Yellowstone, the very consideration for Cove's ownership of the canal. Under section 93-9905, subd. 2, why is this necessary? The only suggestion of a necessity is the cost of maintaining the canal because Cove is insolvent, which insolvency is alleged to be caused by the performance of the obligation to furnish water to Yellowstone in conformity with the agreement. A plea of resulting insolvency is not the necessity required by the statute. One wonders what strange result would accrue if a court assessed the just compensation and damages against an admittedly insolvent corporation! Insolvency is not the "good cause" or "necessity" contemplated by our condemnation statutes, and thus the district court was correct in entering judgment on the pleadings.

■ Also, under section 93-9905, subd. 3, the rule of comparative necessity is not shown. The pleadings show that Yellowstone has the same need for the canal as Cove.

In City of Helena v. Rogan, 26 Mont. 452, 476, 68 P. 798, 802, in considering the right of condemnation of a water right it was said:

"* * * Whether it is necessary to condemn the water right in order to supply the city is to be alleged, and is a judicial question to be determined by the court. That it is a more necessary use than that of a ranchman is to be alleged, and by the court judicially determined. If it were not, then not only could a city condemn and take the water from a ranchman owning and irrigating 160 acres of land, but could, on its own allegation of superior necessity, condemn and take the water from another and a neighboring city, and leave it dry. * * *

"* * * The right [to take by condemnation] will depend, among other things, upon the answer to the question: Is the intended use superior in point of necessity to the present use? Enough must be alleged to show to the court that it is. The mere statement that it is a use superior in necessity would not be sufficient without the facts as to the present use coupled with those appertaining to the intended use."

Also, in Carlson v. City of Helena, 39 Mont. 82, 105, 102 P. 39, 46, it was said:

"* * * The city may acquire a water supply by the exercise of the right of eminent domain * * * even though it may already have been appropriated to some other public use, as is the fact with regard to the water flowing in McClellan Creek. A beneficial use of water flowing in the streams of the state is a public use. [Citing authority.] It may nevertheless be appropriated to a more necessary public use. [Citing authorities.] While this is true, it does not necessarily follow that the city can acquire the exclusive right to the use of the water in a particular stream. It must first be shown that the use for which it is sought is a more necessary use; and *then the city must be able financially to make compensation* to the person or persons entitled to the present use." Emphasis supplied.

It is the foregoing italicized statement from the Carlson case supra, that causes us to speculate on what strange result would occur if damages were assessed against a pleaded insolvent condemnor! Of course, the complaint shows Cove's inability

to sustain the burden of condemnation. Cove has confessed its inability to carry out condemnation.

In Cove Irrigation District v. Yellowstone Ditch Co., 90 Mont. 323, 335, 336, 3 P.2d 280, 283, these same litigants were before us. The complaint in that case alleged that after Cove acquired the canal, the river changed its channel, requiring Cove to build a new headgate at a higher point on the river. The complaint sought to prevent the Yellowstone Company's use of the canal except at such seasons as would have permitted water to enter the canal as originally constructed. Demurrer to the complaint was sustained and the action dismissed. This court upheld the lower court, saying in part:

"* * * If the obligation of the Cove Ditch Company to supply water to defendants became burdensome it had the option of permitting the property conveyed to it by the Yellowstone Ditch Company to revert. * * * The fact that compliance with the contract became more onerous than was contemplated at the time it was entered into does not excuse performance according to its terms."

Enough has been stated to uphold the district court. Appellant's counsel relies on a single case, Houston North Shore Ry. Co. v. Tyrrell, 128 Tex. 248, 262, 98 S.W.2d 786, 794, 108 A.L.R. 1508, admitting he could find no other. That case does not touch upon the disability of the condemnor to carry out the condemnation. In addition, the Texas court construed the petition as one "expressing a present intention to permit in this proceeding and as a part of it the termination of their title under the deed."

The court also considered "This allegation is in effect a representation or admission by appellants that in the trial of the condemnation proceeding the titles of the respective parties shall be regarded and treated as if the title under the deed were terminated by the breach of its condition at the time of trial."

The Texas case is not applicable then because in the instant

case, the public use for which condemnation is resorted to must allege a more necessary use than that to which the right-of-way is already appropriated.

For the foregoing reasons the judgment of the district court is affirmed.

MR. CHIEF JUSTICE JAMES T. HARRISON and MR. JUSTICES ADAIR, DOYLE and JOHN C. HARRISON concur.