## Pennsylvania Fire Insurance Company v. Cullin.

(Decided October 23, 1923.)

### Appeal from Daviess Circuit Court.

1. Insurance—Parol Contract at Rate to be Determined by Rerating Held Valid.—Where insured, in applying for additional insurance, complained as to the rate, and it was orally agreed that there would be a rerating by the actuarial bureau, and that insured would pay such rate, and a binder would be placed on the property, the contract was not invalid because the actual rate to be paid was not specified, and insured was entitled to recover for loss occurring before the property was rerated; a binder being written.

2. Contracts—Promisor Not Discharged Because Performance Becomes Impossible.—When performance becomes impossible subsequent to the contract, the general rule is that the promisor is not thereby discharged.

3. Insurance—Impossibility of Obtaining Rerating no Defense in Action on Contract Providing for Rerating.—Where a parol contract of fire insurance was entered into and a binder written, standard policies to be issued after a rerating, it was no defense to an action to recover for loss occurring before a rerating that

the insurer could not require the rating board to act, where under the standard form of fire insurance policy it had the option to cancel the policy on its own volition; the old rate continuing under a rule of the rating board until a rerating was had.

4. Contracts—Interpretation Rendering Contract Legal Adopted.—The presumption is in favor of the validity of a contract, and if it is susceptible of two meanings, the one legal and the other not, that interpretation will be put on it which will support and give it operation.

5. Insurance—Question of Duration Under Parol Contract Held for Jury.—In an action on a parol contract of fire insurance, held, that there was an issue of fact as to the duration of the policy, which would entitle defendant to a jury trial, unless precluded from relying on such defense.

6. Insurance—Personal Examination Under Contract Estopped Insurer from Claiming Invalidity.—Where a fire insurance company required personal examination of insured after loss, as it only had a right to do under a contract, it was estopped to claim that the parol contract of insurance subsequently sued on was invalid, because it did not fix the duration of the contract, though duration of a policy is an essential element.

SANDIDGE & SANDIDGE for appellant.

MILLER & ROWE for appellee.

OPINION OF THE COURT BY JUDGE McCANDLESS—Affirming.

This appeal involves the validity of a parol contract of fire insurance upon which the appellee recovered a judgment of $7,900.00 in the court below.

It is conceded that such a contract is valid when made by an authorized agent, provided it embraces the following essential elements: (a) subject matter, (b) amount of insurance, (c) rate, (d) duration, and if the agent represents more than one company, (e) the name of the company or companies, and the amount of risk placed with each. This is in accord with our decisions. Hartford Fire Ins. Co. v. Trimble, 117 Ky. 583; Fireman's Fund Insurance Co. v. Searcy, 157 Ky. 749; Shawnee Fire Ins. Co. v. Settle, 162 Ky. 82; Shawnee Fire Ins. Co. v. Roll, 145 Ky. 113; Amer. Central Ins. Co. v. Hardin, 148 Ky. 246.

The real contention is that neither rate nor duration was agreed upon, and a consideration of these questions requires a brief statement of fact.

In June, 1920, appellee purchased a tract of twelve acres of land adjoining the limits of the city of Owens-

boro, upon which was located an old brick residence, then in a dilapidated condition.  On the following day he took out a $3,600.00 policy of fire insurance on this residence in the Firemen's Fund Insurance Company, the policy being written by the agency of J. C. Rudd & Co., who were general agents for several companies with power to execute and issue policies direct.

During the ensuing months he remodelled the residence, made improvements and furnished it nicely and moved his family into it.  Also during that time the city limits were extended and this property taken into the city.

On the 5th of January, 1921, he applied to J. C. Rudd & Co. at their office for additional insurance.  There were present Mrs. Mary Rudd, Van Rudd, Miss Louisa McDaniel, the stenographer, and Lew Webb, the bookkeeper.  Only the plaintiff, Mrs. Rudd and Miss McDaniel have testified as to what occurred.

The plaintiff says that he told them the rate he paid on the former policy, $1.85 per hundred, was prohibitive, was the reason he did not take more insurance at first, but he had heard the rate had been lowered since the property had been taken into the city; that they told him the rates had not been changed, and that it would require rerating upon the part of the actuarial bureau to accomplish that result, but that they would place a binder on his property, that would protect it until the rating could be secured, and that when the rate was thus ascertained they would issue a standard form policy and he could pay for it; that Mrs. Rudd said she was familiar with the property and its improvements, and that he ought to have $10,000.00 on the dwelling; that after some talk he agreed to take $9,000.00, and as he was already carrying $3,600.00 it was agreed for an additional $5,400.00 on it, and $2,500.00 on the furnishings; that he asked Mr. Rudd about it a short time afterward but they had no further information.

On February 23, 1921, the building and contents were destroyed by fire; he made out proof of loss and on demand or request of defendant's agents met them and their attorney at the latter's office and was interrogated under oath as to the matters involved, all of which was taken down by a stenographer.

Pending a motion for a peremptory instruction by defendant, plaintiff was recalled and testified that it was agreed that the insurance should be for three years.  The

evidence of Miss McDaniel and Mrs. Rudd corroborated the plaintiff except as to duration. Miss McDaniel says nothing was said about it, but admits that such agreement could have been made without her hearing it. She wrote a binder upon the property a few minutes after plaintiff left. It was introduced in evidence and reads:

> "Bound 5,400 on dwg.
> Bound 2,500 on Hhg.
> North side West Second St.,
> Pennsylvania Fire Insurance Co.,
> R. Cullin, Jan. 5, 1921.
> J. C. Rudd, Son & Co."

Mrs. Rudd does not remember the time being discussed, but is positive that three years was not agreed upon. It is further shown that the actuarial bureau was called upon, but had not rerated the property.

The court gave a peremptory instruction to find for plaintiff. Appellant insists that a similar instruction which it offered should have been given in its favor, and that the court was in error in one or both of its rulings. The argument is that the plaintiff did not have to accept the insurance unless the actuarial bureau acted and made a rating suitable to him, therefore the agreement was unilateral; that there was never a time in which the board could have been compelled to make the rating, and since the fire this has become impossible, and both parties are thereby relieved of their obligations; that plaintiff should not have been permitted to testify pending the motion for peremptory, but if this evidence was properly admitted there was an issue of fact as to the duration of the policy which called for a submission to the jury.

If the contract of insurance had depended upon a rate being fixed that was satisfactory to the insured there would be much force in the first suggestion, but such is not the case; the agreement for insurance was positive and unconditional. True, it did not specify the premium rate, but it did provide a way in which it was to be fixed.

In those states in which a rate fixing body is not provided by statute, parol open contracts for insurance at "a reasonable rate," or "at a rate to be fixed upon inspection pending the issuance of the policy," have been held valid. Scammel v. China Insurance Co., 164 Mass. 341; Cook v. Aetna Ins. Co., 7 Daly 555; Jacobs v. Atlas

Ins. Co., 148 Ill. 325.  The same rule seems to apply where such bodies exist, except as to the manner of ascertainment of the rate.

In the case of the British Ins. Co. v. Wilson, 77 Conn. 563, it was said:

> "The terms of the binder of November 30th show that it was intended to be a temporary contract, but to bind the parties until policies should be issued in conformity with it.  Although the rate of premium was left blank, if, as the defendant testified, that was to be thereafter fixed by the chairman of the local board of fire underwriters, the effect of the contract was to bind both parties to such a rate as might in due course of business be so fixed.  Smith & Wallace Co. v. Prussian National Insurance Co., 68 N. J. L. 674, 54 Atl. Rep. 458."

The duties of the chairman of the local board of fire underwriters in that state appear to be analogous to those of our rating board, and this case seems directly in point.  We conclude the contract was not unilateral in this respect.

The property was not rerated before the fire, and a literal performance in that particular is now impossible, but it does not necessarily follow that either party is thereby relieved of his or its individual liability.  It is universally held, "When performance becomes impossible subsequent to the contract the general rule is that the promisor is not thereby discharged."  13 C. J. 639; Stevens & Elkins v. Lewis, 170 Ky. 238; Beatty & Skinner v. Scrivner, 19 Ky. 139; Helburn v. Mofford, 70 Ky. 169; Home Ins. Co. v. Wood, 139 Ky. 657; Gravel Switch, etc., Tel. Co. v. Lebanon, etc., Telephone Co., 139 Ky. 151; L. & N. R. R. Co. v. Crowe, 156 Ky. 27.  Appellant concedes this but argues that the facts bring this case within one of the exceptions to the general rule, and quotes from page 13 C. J. 640, as follows:

> "There may be in the nature of the contract an implied condition by which the promisor may be relieved.  Such is the case where it appears from the contract that the parties knew and contemplated that its fulfillment would be dependent on the existence at the time for performance of certain things or conditions essential to its execution, or where performance depends on the happening of an event over which neither party has any control, in which case a

condition may be implied that the contract shall be abrogated on the non-happening of the event.''

And also:

"An exception to the general rule just stated is recognized by the later cases where the event creating the impossibility is one which cannot reasonably be supposed to have been within the contemplation of the parties at the time of the contract.''

These exceptions can have no application here. The fact that the agreement was made and binder issued pending the ascertainment of the rate is, of itself, conclusive evidence that the parties contemplated the danger of fire before the rate could be made or policy issued, and it was such a risk against which they were guarding.

It is unnecessary for us to determine whether or not the appellant as a member of the rating board could have required that body to act by mandamus or other proceedings, because under the standard form of fire insurance policy it had the option to cancel the policy on its own volition and collect the unearned premium according to the rule suggested below; hence, if it met with any undue obstruction in securing a rerating its remedy was simple and easy. If the property had not been destroyed it could not raise the question of the impossibility of securing the rating as avoiding the insurance; nor does the destruction of the property before the rating affect the result. It is in proof that under the rule of the rating board the old rate continues until a rerating is had. Even if there was no such rule, as we have no open rate in Kentucky, the court would have adopted this. The presumption is in favor of the validity of the contract, and if it is susceptive of two meanings, the one legal and the other not, that interpretation will be put upon it which will support and give it operation (Bibb, etc. v. Miller, 11 Bush 309; Henderson Belt Line Ry. Co. v. Descamp, 14 L. R. 44; Berry v. Frisby, 27 L. R. 724; First National Bank v. Doherty, 156 Ky. 386), hence the rate of premium under existing conditions was the old rate of $1.85 per hundred. The same rate would have applied and could have been collected if the insurance had been cancelled before the fire, hence the fulfillmnt of the contract did not depend upon the existence or performance of things or conditions over which neither party had control, and we think it valid in this particular. How-

ever, it must be admitted that there was an issue of fact as to the duration of the policy, and this would have entitled defendant to a jury trial unless by its conduct it was precluded from relying on this defense.

Appellee furnished proof of loss in accordance with the provisions of the standard form of fire insurance policy. Later, at the instance of appellant, he appeared at the office of its attorney and in the presence of three of their agents was examined under oath for one and one-half hours concerning the matters involved, all of which was taken down by a stenographer.

The Civil Code authorizes a party to a lawsuit to take the deposition of his adversary, but it is unusual for one in anticipation of a suit and before it is filed to require a personal examination under oath of his opponent. To demand this implies a right thereto.

In this case such right could exist only by virtue of a contract. The standard form of policy authorizes it, but to claim a right under it would be to acknowledge its existence. The question therefore is, can one claim the benefits of those portions of a contract that are favorable to him and at the same time deny its existence?

Our attention has not been called to a case directly in point, but the same principle has been applied in numerous cases, where with knowledge of the facts upon which it relied to establish a forfeiture an insurance company required the personal examination of the insured or otherwise recognized the validity of the policy. Such conduct has universally been held to be a waiver of the forfeiture clause. Petroff v. Equity Ins. Co., 183 Iowa 906; Williams v. N. H. Ins. Co., 194 Mich. 656; Arispe Mercantile Co. v. Queen Ins. Co., 141 Iowa 607; Cleaver v. Trade Ins. Co., 71 Mich. 414; Pratt v. Ins. Co., 130 N. Y. 206; Germania Ins. Co. v. Allen, 69 Kan. 729; Titus v. Glens Falls Ins. Co., 81 N. Y. 410; Phoenix Mutual Fire Ins. Co. v. Heffler, 2 Ohio 131; Phoenix Ass'n Co. v. Munger, 49 S. W. 671; Georgia Home Ins. Co. v. O'Neal, 14 Tex. 516.

> "After the fire and after the defendant had notice of the proceedings, it required the insured to appear before a person appointed by it for that purpose to be examined under the clause in the policy hereinbefore mentioned, and he was there subjected to a rigorous inquisitorial examination. It had a right to make such examination only by virtue

of the policy. When it required him to be examined it exercised a right given to it by the policy. It then recognized the validity of the policy, and subjected the insured to trouble and expense, after it knew of the forfeiture now alleged, and it cannot now therefore assert its invalidity on account of such forfeiture." Titus v. Glens Falls Ins. Co., *supra.*

The same conclusions were reached under similar conditions in Georgia Home Ins. Co. v. O'Neal, *supra.*

It seems that the same principle should apply here. True, the duration of the policy is an essential element in the contract, but the company is not required to rely upon it. U. S. of A. v. N. Y. & P. R. S. S. Co., 239 U. S. 88.

If it with full knowledge of such defense elects to treat the policy as valid and use its provisions as a means of developing other defenses, it is acting within its rights, but such conduct is a waiver of the defense of invalidity and it will be estopped from relying upon such.

This conclusion renders it unnecessary to discuss the other question involved, as we do not think there was sufficient contradiction to authorize the submission of any other questions to the jury.

Judgment affirmed.