Affirming.
C.A. Ramey was, in the fall of 1920, engaged, under contract, in taking the timber from a tract of land in Barren county, and in that operation had a number of men employed. Desiring to operate under the terms of the compensation law, he on the 29th of September, 1920, applied to Dickinson, the local agent of the United States Fidelity Guaranty Company, for such insurance. He executed and delivered to Dickinson forms No. 1 and No. 14 prescribed by the compensation board, wherein he elected to operate under that law, the election to be effective as of that date; and in form No. 1 recited that his method of securing payments of compensation to his employes was insurance by United States Fidelity Guaranty Company, of which Dickinson was the agent. In form No. 14 he certified that he had secured the payment of compensation of his employes by insuring his liability for such injuries as might occur for one year from that date, with United States Fidelity Guaranty Company. Each of these papers was properly executed by him on that day and left with Dickinson to be forwarded to the state agent of the guaranty company at Louisville.
There was appended to form No. 14 the following certificate signed by United States Fidelity Guaranty Company, by Dickinson, agent, and likewise having appended thereto the name of Thomas S. Dugan, who appears to be the state agent of the guaranty company in Kentucky, to-wit:
 "The undersigned, the carrier, mentioned in the above certificate, hereby certifies that it issued its policy No. Z-26, 912 to C.R. Ramey insuring the liability of said employer to pay compensation to his, its or their employes, (except if not full coverage state extent of), for injuries occurring between the 29th day of September, 1920, and the 29th of September, 1921."
At the time of the delivery of these papers to the agent at Glasgow it was agreed between the parties that the guaranty company, or its officials, would file them with the compensation board, and would issue the formal policy referred to in the above copied certificate. The *Page 281 
papers were forwarded by the local agent to the state agent and by him to the home office of the guaranty company at Baltimore. Between the 29th of September and the 11th of October Ramey employed Oren Broady in his timber operation, and on the 11th of October Oren Broady signed with his employer an agreement to operate under the terms of the compensation law. Then on the 14th of October, early in the morning, Oren Broady, while engaged in the timber operation, was killed by a falling limb, and at that time, so far as we can determine from the record, the formal policy of insurance had probably not been issued, nor had forms No. 1 and No. 14, executed by Ramey on the 29th of September and turned over to the agents of the guaranty company, been filed with the compensation board as had been agreed.
Upon an application made by the widow and two infant children of Broady to the compensation board, an order was entered, after a hearing, dismissing the application because Ramey had not at the date of Broady's death elected to operate under the provisions of the act by filing with the compensation board the notice required under section 4946, Kentucky Statutes, which provides:
 "Every employer accepting the provisions of this act shall at the time of such acceptance file with the board in substantially the form prescribed by it, and annually thereafter, or as often as may be necessary, evidence of his compliance with the provisions of this section."
Thereafter the widow and two infant children filed this suit to review the action of the compensation board, and upon a hearing the chancellor entered a judgment directing the compensation board to docket, try and hear and pass upon the claim of the widow and children, which was subsequently done by the board.
This appeal is from the action of the court directing a determination by the board of the claim, upon the ground that at the time of Broady's death no contract of insurance was in existence between the employer and the guaranty company, because the policy had not then been issued or delivered, and because, under the terms of the quoted statute, forms No. 1 and No. 14 had not at that time been filed with the compensation board.
It may be proper here to say that a day or two after the death of Broady the formal policy was prepared and sent by the guaranty company to its agent at Glasgow, *Page 282 
and that policy, while possibly prepared and sent after the death of Broady, was dated the 29th of September, the date the application was made, and the date the certificate above quoted says the policy was issued.
At the time of the application Ramey agreed with Dickinson, the agent, as to the payment of the premium, and Dickinson on that day charged the same to Ramey and credited the same to his company on his books; and thereafter paid the same to the company.
The language of the certificate signed by the company, through its agents, shows that the policy was issued on that day, and while that statement was not accurate, it unmistakably evidences an agreement between the parties that the insurance should be effective from that time. And that conclusion is reinforced by the fact that the premium was actually that day charged to Ramey and credited to the company, whereby its agent became obligated to it for the premium, even though he might never collect the same from Ramey; and is further reinforced by the fact that when the policy was finally issued it was dated September 29th, the day the application was filed, and the day its agents had certified it was issued.
Certainly if, as has often been held, there may be entered into an enforceable verbal contract of insurance, this written certificate that insurance had been given and was then effective must be deemed to have been in force from that time, even though the formal policy was not issued until later.
Even though the formal policy was not issued until after the death of Broady, the principles enunciated in Hopkins v. Phoenix Fire Insurance Company, 200 Ky. 365, are not applicable. In that case it was held that where a local insurance broker has written to another agent who represented several fire insurance companies, but designated no particular company in which he desired the insurance, and the latter agent wrote a "binder" directing his stenographer to prepare a policy in a certain company, there was no binding contract, because plaintiff, not having designated any company, might have rejected the offered policy, and that, therefore, when the property was destroyed before the acceptance of the policy or binder, there could be no recovery. In this case, however, the application was made to a designated company, and that company accepted the application, and certified that the insurance was then in force. *Page 283 
Likewise in the Hopkins case it was held that a fire insurance agent has no authority to bind his company by attempting to insure property already destroyed, and it is insisted that the principle should apply here. There would be much force in this if there had been no insurance in effect until the issue and delivery of the policy; but here we have seen that from the 29th day of September, according to the guaranty company's certificate, the insurance was in effect at all times.
In the plaintiff's petition for review the facts are clearly set forth showing a complete estoppel against the guaranty company to rely upon the defense that Ramey was not operating under the compensation law because at the time of Broady's death he had not filed his application with the compensation board. Not only does the pleading rely upon this estoppel, but the evidence convincingly shows that Ramey lodged after their execution forms No. 1 and No. 14 with the guaranty company and its agents, upon the express understanding that they would file the same with the compensation board, and thereby make effective his purpose to operate his business under that law. It is shown that these papers were not filed with the board until the 10th day of November, and if through their neglect between the 29th of September and the 14th of October Ramey may be denied the insurance protection for which he had contracted, certainly they will not be permitted in a court of conscience to rely upon their own negligence as a defense against a claim asserted against them.
By their negligence throughout this period in failing to file those papers with the board, not only did they induce Ramey, the employer, to continue his timber operation under the belief that he was insured, but they indirectly induced the decedent, Broady, to sign and execute a paper whereby he agreed to work for Ramey under the provisions of the compensation act, at the time believing the insurance for which Ramey had applied was in effect for his benefit. These facts, practically undisputed, seem to create a perfect estoppel against the company to rely upon this defense.
In the case of Junior Oil Company v. Byrd, 204 Ky. 375, on the first day of his service, and before he had accepted the provisions of the compensation act, an employe was injured. The employer, however, was operating under the compensation law, and a casualty company *Page 284 
was carrying its insurance. After the injury the casualty company, with a knowledge of the facts, procured the general manager of the employer to get the injured employe to sign the register, whereby he agreed that his claim for compensation might be adjusted under the compensation act. Thereafter the casualty company, by agreement with him, made payments to the employe up to a certain period, when it ceased. Thereafter the employe presented his claim to the compensation board and his application was there denied because at the time of the injury he had not accepted the provisions of the act. Upon his petition for review the case was remanded by the circuit court with directions to the board to make him an allowance to be credited with that with which he had already been paid.
That judgment was affirmed by this court, and in passing upon the question of estoppel presented, it said:
 "We are clearly of the opinion, not only that the employer and its insurance carrier have the power and did waive the failure of the employe to accept the provision of the act before the accident, but that they are estopped to deny it after having induced him to sign the register and to accept compensation under the provisions of the act — actions upon his part which clearly would have estopped him from suing the employer at common law for his injury. Allen v. Am. Milling Company, 209 Ills. App. 73.
Judgment affirmed.