## Standard Fire Insurance Co. v. Robey et al. Robey v. Western Assurance Co. et al.

(Decided Nov. 27, 1934.)

F. M. DRAKE and JNO. F. FORD, Jr., for Standard Fire Ins. Co.

BRADLEY & BRADLEY for R. L. Robey.

WOODWARD, HAMILTON & HOBSON for Western Assur. Co.

GORDON, LAURENT & OGDEN and T. M. GALPHIN, Jr., for Springfield Fire & Marine Ins. Co.

OPINION OF THE COURT BY STANLEY, COMMISSIONER—Affirming.

This is a contest between insurance companies as to liability for a $1,900 fire loss. In November, 1932, L. A. Johnson, an insurance agent in Lexington, wrote a policy for $650 on the stock and fixtures in the general store of R. L. Robey, in Scott county, in the Western Assurance Company, of which he was the authorized agent. In December he procured an additional policy for $1,250 on the same property through an agent of the Springfield Fire & Marine Insurance Company. These policies were duly delivered to Robey and the premiums paid. At least this second policy was issued because of the cancellation of another. On February 4, 1933, Johnson placed the $1,900 insurance with the Standard Fire Insurance Company, of which he had recently become an agent. On that day he wrote Robey inclosing a binder or temporary contract in that company, with the advice that it took the place of the other two policies which had been canceled, and that the policy would be issued and the binder taken up in the next day or two. He requested the return of the other two policies. Robey testified that, because of illness, he did not see the letter or the binder until three or four days later. For the purpose of returning the two policies to Johnson, he got them ready to be mailed on the 8th or 9th, or maybe a little later, but he "missed a mail," and through inadvertence never did mail them. After the fire, he concluded to hold them until he obtained legal advice. Later they were delivered to Johnson.

The Standard Company had been promptly notified of the binder. On February 11th the head office wired Johnson to cancel it. This was on Saturday. The property was destroyed by fire on Monday the 13th. The telegram was not received by Johnson in person until after the fire because he was sick in bed. On February 15th, without the knowledge of the loss, the company confirmed the telegram, and expressed regret at having to reject the business because their experience with risks on such outside unprotected property had not been satisfactory.

The question at issue is whether, before the risk materialized, the two policies had been in fact canceled and the binder substituted so as to cover the loss. The circuit court decided that the liability rests upon the binder of the Standard Company. It appeals the judgment with the other two insurance companies and Robey

as appellees, and Robey brings an appeal on the same record with the Western and the Springfield Companies as appellees. However, as suggested, the contest is actually between the companies, as all agree that Robey is entitled to recover $1,900 of somebody.

It is contended by the Standard Company that there was never any contract between it and Robey, since there was no meeting of minds or reciprocal action; that there existed nothing but an unaccepted offer on the part of Johnson to substitute the liability of the Standard Company for that of the other two companies. Negativing that argument, the appellees maintain that the course of dealing between Robey and Johnson was such as to constitute the latter as the general agent of the former in respect to the whole matter of his fire insurance, and authorized him to receive the notice of cancellation and substitute another insurer. Not disputing the general rule as to the consequent authority arising from such relationship, it is denied that the evidence established such agency.

Both the policies of the Western Company and of the Springfield Company contained the usual provision that the company could cancel the policy "by giving five days notice of such cancellation." The reception of unequivocal notice completes the rescission of the contract. It was not necessary that Robey should have consented to the cancellation or accepted the notice thereof, or have returned the policies or even that he should have intended to do so or to do any of these things. Citizens' Insurance Company v. Henderson Elevator Company, 123 Ky. 478, 96 S. W. 601, 97 S. W. 810, 29 Ky. Law Rep. 976, 124 Am. St. Rep. 371; Stuyvesant Insurance Company v. Barkett, 226 Ky. 424, 11 S. W. (2d) 87; Fidelity Mutual Life Insurance Company v. Heltsley, 254 Ky. 453, 71 S. W. (2d) 1017; 14 R. C. L. 1009; 26 C. J. 137. Nor is it material whether the course of dealing by the parties and the action of Johnson in making substitution of another contract constituted him a general agent of the insured to receive notice of cancellation, for the evidence is that the insured received actual personal notice thereof, and there is no question of waiver of duration of time. Let us look to the evidence. On January 16th Johnson wrote Robey two letters advising him that the two companies had requested cancellation of their respective policies, and he asked that they be returned to him. There was

nothing said about reinsuring the property. On February 1st Johnson again wrote Robey insisting that he forward the Western Company's policy to him, as the company was insisting upon cancellation and would deny liability in case of loss. He stated that he anticipated adding a new company (presumably to those which he presented) that would probably carry that line of risks, and he would be pleased to forward him a duplicate policy. The letter of February 4th again requested the return of the two policies, and inclosed the binder, as we have stated, in substitution thereof.

While it might be said that the letters of January 16th were not positive, and merely conveyed the information that the agent had been instructed by the companies to cancel and take up the policies, the letter of February 1st relating to the Western Company and that of February 4th relating to both it and the Springfield Company, with the inclosure of the binder, was certainly ample notice. 14 R. C. L. 1010; 26 C. J. 138. All of this occurred more than five days before the fire. So the case seems to be simply a cancellation of two policies and reinsurance a few days later rather than a mere substitution involving simultaneous action or cancellation by mere acceptance of another policy.

The record is that for several years Robey had relied upon Johnson to carry his insurance protection, and he had regularly and satisfactorily done so. Robey had left the selection of the companies wholly with Johnson, and without any special request or direction he systematically sent Robey the renewal policies upon expiration or substitutions where current policies had been canceled, and they were always accepted. This was done in the substitution of the Springfield policy, obtained through another agent, for a prior one that had been canceled. Perhaps we should add that Robey qualified his testimony as to his reliance upon Johnson and the uniform acceptance of his acts by saying that he had always reserved the right to attend to his own business, and, if Johnson had not done so satisfactorily, he would have taken the matter in his own hands. But he never exercised, or purposed to exercise, that reservation on this or any other occasion. Concerning the instant transaction, Robey testified as follows:

"Well, I never questioned the binder. I thought it was legal and intended to return the policies but

the fire occurred with all of them in possession. After the fire occurred with all of them in possession, then I decided to get the legal view of it or what that would mean, before I did anything. I never thought but what the policies would follow, but the fire occurred before they did."

We do not doubt that this binder was accepted by Robey. His failure to promptly reject the instrument constituted its acceptance in the circumstances. 13 C. J. 276; 26 C. J. 59. The same method was employed in the delivery of this contract by Johnson as the duly authorized agent of the Standard Company as that employed throughout the course of dealing by the parties. It is a common practice. These legal inferences or implications supplement the positive evidence of acceptance. The execution of this contract was complete. Connecticut Insurance Company v. T. C. Caummisar & Sons, 218 Ky. 378, 291 S. W. 776; Girard Fire & Marine Insurance Company v. Anglo-American Mill Company, 220 Ky. 173, 294 S. W. 1035; Stuyvesant Insurance Company v. Barkett, supra; annotation, 83 A. L. R. 300. If there were only the implications of authority and the agent had only written a specific or isolated policy and not been expected or authorized to maintain insurance protection for the owner, a different conclusion might be proper. The cases of Commercial Union Assurance Company v. Urbansky, 113 Ky. 624, 68 S. W. 653, 24 Ky. Law Rep. 462; Hopkins v. Fire Insurance Company, 200 Ky. 365, 254 S. W. 1041, and others relied upon by the Standard Company, involve such state of fact.

No question is raised, nor could it successfully be, as to the effectiveness of this binder or informal temporary contract to bind the Standard Company to pay the stipulated amount. Johnson was its duly commissioned and licensed agent. The company recognized its effect by hastily directing its agent to cancel it. See Pennsylvania Fire Insurance Company v. Cullin, 202 Ky. 107, 258 S. W. 965; Ramey v. Broady, 209 Ky. 279, 272 S. W. 740; 26 C. J. 48. If it be binding, what matter is it to the company issuing it if the other policies had not been canceled?

We discover no merit in the further argument that there was no consideration supporting the contract, since no premium was paid nor any arrangement made

for its payment. The binder was recognized as temporary protection, and it was made clear that it would be replaced by a formal policy when the company had made a form available to its agent. Fire insurance rates in any particular community and often on particular property are known to be standard, and there was an implied promise to pay whatever premium was chargeable. 26 C. J. 49. When the two policies had been canceled, the current account which Robey maintained with Johnson showed a credit of $53, which was available for the satisfaction of the Standard premium. Johnson's testimony makes it clear that this was a matter not troubling him. The company looked to him as its agent for the premium, and it was up to him to collect whatever balance was due by Robey. Pelican Assurance Co. v. Schildknecht, 128 Ky. 351, 108 S. W. 312. Moreover, it was stipulated in the record the parties waived all technicalities which might prevent a decision on the straight-out question of liability.

The judgment is affirmed on both appeals.