Harold RABB, Appellant,

v.

PUBLIC NATIONAL INSURANCE COMPANY, Appellee.

No. 12984.

United States Court of Appeals Sixth Circuit.

May 10, 1957.

————◆————

Charles R. Coy, Richmond, Ky. (Chenault & Coy, Charles R. Coy and James S. Chenault, Richmond, Ky., on the brief), for appellant.

Joseph E. Stopher, Louisville, Ky. (A. J. Deindoerfer, J. W. Knippenberg, Boehl, Stopher, Graves & Deindoerfer, Louisville, Ky., William R. Alvin, Miami, Fla., on the brief), for appellee.

Before MARTIN, MILLER and STEWART, Circuit Judges.

SHACKELFORD MILLER, Jr., Circuit Judge.

Appellee insurance company instituted this declaratory judgment action seeking a declaration of rights as to the existence or nonexistence of an oral liability insurance contract upon the automobile of an army officer, Lt. Moores, which was involved in an accident about 6:20 p. m. on May 27, 1954, near Richmond, Ky. As a result of the accident Lt. Moores was killed and the appellant, who was a passenger in the car, was injured.

Lt. Moores, whose post of duty was Fort Sill, Oklahoma, was a resident of Richmond, Ky., and was on leave at the time of the accident. He had purchased the automobile in Richmond on May 17, 1954, but was unable at the time of purchase to obtain insurance coverage through his local insurance agent because of the general policy of insurance companies not to write policies of liability insurance on military personnel, which was regarded as sub-standard and calling for a higher than usual premium rate. The companies represented by the local agent would not write an automobile policy of insurance covering a soldier. The local insurance agent undertook to secure coverage through other agents without success. Among those whom he contacted was a man named Morgan in Lexington, Kentucky, who was the manager of Coal Operators Casualty Company, one of the companies represented by the local agent. Morgan told the local agent that his company would not write a policy for a soldier. Some three days later, on May 26, 1954, Morgan came to Richmond to see the local agent and found him at the golf club. After talking a few minutes, the subject of insurance for Lt. Moores was brought up again and Morgan said that he believed he could help place the insurance through a friend in Louisville who wrote that kind of insurance. The local agent suggested that Morgan contact the Louisville agent by long distance phone "and see if we can get this placed for him." The two men went to the locker room of the club and Morgan called the Louisville agent and talked to him about the matter. Whether this telephone conversation resulted in a contract of insurance covering the automobile of Lt. Moores is the issue presented. Appellant contends that this conversation constituted an oral contract of insurance covering Lt. Moores's automobile with $25,000–$50,-

000 liability limits. Appellee contends no contract of insurance was entered into at that time or any time before the accident.

■ Under the law of Kentucky, in order for an oral contract of insurance to exist, it is necessary that the minds of the parties meet on the following essential matters: (1) the subject matter, (2) the risk insured against, (3) the rate of premium, (4) the duration of the risk, (5) the amount of insurance and (6) the identities of the parties. Shawnee Fire Insurance Co. v. Roll, 145 Ky. 113, 140 S.W. 49; Kitchen v. Yorkshire Insurance Co., 226 Ky. 376, 10 S.W.2d 1074.

There was the following evidence before the District Judge.

Morgan testified that he called the Louisville agent from the Richmond Country Club with the local agent beside him and gave the Louisville agent what "limited information" the local agent had at the moment; that he asked the Louisville agent if he would bind the risk and the agent said that he would; that he did not recall discussing with him the limits of liability; that there was no discussion of the amount of the premium; that the insured's address, age, and occupation was necessary information for the insurer to have; that he had ridden in the automobile and from observation knew it was a shiny, new, blue Ford with Fordomatic drive, but that he did not know the motor number or anything like that. The appellee's agent asked for more information because he didn't have enough information after the conversation to write the policy.

The local agent testified that Lt. Moores told him that "he had just bought an automobile and would like to have some insurance on it"; that he, the agent told Lt. Moores that "it is awfully hard for a soldier to get insurance, much less an unmarried soldier, but I will try for you"; that Lt. Moores wanted comprehensive coverage and collision and liability insurance, but the amount of liability was never mentioned; that in the conversation between Morgan and appellee's agent, Morgan told the agent the automobile was a new 1954 Ford Tudor, valued at around $2,200 to $2,300 and had been paid for in cash and that Lt. Moores would like to have fifty dollars deductible, comprehensive coverage and twenty-five and fifty thousand liability. On cross-examination he stated it was the usual custom not to write a soldier an automobile liability policy with liability limits greater than five and ten thousand dollars, and that he had never tried to write such a policy with greater limits; that he did not tell Morgan what limits of liability he wanted; that he did not at that time know Lt. Moores's age and that his age would make a difference with respect to writing the policy and the premium to be charged; that there never was any agreed premium; that every state has a different premium charge and he didn't know what it would be; and that he never told Lt. Moores that he had been able to get a binder on the risk. He had previously told Lt. Moores he thought it would cost between one hundred and one hundred and fifty dollars. However, the evidence showed that such a policy with only five and ten thousand dollars limit would cost approximately $298.

Appellee's agent testified that Morgan called him on the phone for the purpose of finding out whether he would write the type of insurance that Lt. Moores apparently wanted; that Morgan did not ask him to bind the risk and that he did not bind it; that he did not have enough information from Morgan to be able to tell whether his company would take it or couldn't take it; that it was necessary for him to know, among other things, the applicant's age, what he paid for the car, where he was stationed and where the car was to be operated; that Morgan was not able to give him enough information to tell what the risk was or the premium for the risk; that limits of liability were not discussed in the conversation; that the standard limit of liability coverage on a military risk was

five and ten thousand dollars; and that he told Morgan to send the necessary information to him and that he would then contact the local agent "and tell him what we could do with the risk."

At 8:52 a. m., May 28, 1954, which was the day following the accident, there was received in Morgan's office a letter from the local insurance agent, reading as follows: "Per our conversation on Mr. Moores of this morning, I am forwarding the necessary information for issuance of his policy." The letter said that Moores was in the Army, stationed at Fort Sill, Oklahoma, described the automobile, and stated, "coverage comprehensive, $50.00 collision, 25/50/5 liability. This is class No. 1 and Mr. Moores is single and 26 yrs. of age." The local agent testified that Lt. Moores's age and where the car was to be used would have a bearing on the premium to be charged. There was a pencil notation on the bottom of this letter in Morgan's handwriting as follows: "Bound—Wed. May 26/1954 Spurlin Ins. Agency—Telephone Conversation Morgan/Spurlin." The letter was in turn transmitted by Morgan to appellee's Louisville agent about noon on the same day shortly before learning of the accident.

■ The district judge found that neither the local insurance agent nor Morgan ever discussed with Lt. Moores the amount of liability against which he was to be insured or the extraordinary premium which it would have cost, or advised him of the telephone conversation between Morgan and appellee's agent. He also found that the testimony in reference to the details of the telephone conversation between Morgan and the appellee's agent in Louisville fell far short of clear or convincing evidence that a contract of insurance, in prasenti, was contemplated, and that the parties to the conversation understood that additional information, not then available, was essential to such a contract. In our opinion, the findings of the district judge are not clearly erroneous and must be accepted on this appeal.

On the basis of the foregoing facts, the district judge ruled that there had been no meeting of minds between the parties on the essential elements of the contract. He pointed out that under the circumstances Lt. Moores could not have been made to accept the policy which appellant claims was made, and pay the premium therefor, which later proved to be approximately twice what he had been advised it would be; that mutuality of obligation was lacking, and there was no enforceable contract. Hopkins v. Phoenix Fire Insurance Co., 200 Ky. 365, 370–371, 254 S.W. 1041.

■ We recognize the well settled rule in Kentucky, as in other states, that a so-called "binder" or temporary insurance until the regular policy is executed and delivered, when issued by an authorized agent, can constitute a valid contract of insurance even though the written binder may not specifically set out the essential elements about which the minds of the parties must have met. Pennsylvania Fire Ins. Co. v. Cullin, 202 Ky. 107, 258 S.W. 965; Ramey v. Broady, 209 Ky. 279, 272 S.W. 740; Standard Fire Ins. Co. v. Robey, 257 Ky. 204, 77 S.W.2d 785. The execution and delivery of the binder is substantial evidence, usually desired by an insured, that the insured and the designated insurance company have come to an agreement with respect to insurance. The matters upon which the parties have agreed and which may not be referred to in the "binder" can be shown by other evidence if a loss or liability occurs. But such a rule does not eliminate the requirement that the minds of the parties must have met on the necessary elements in order to have a valid contract of insurance. The use of the word "binder," is misleading insofar as it may convey the impression that the insurance company is bound even though no contract of insurance has been entered into. In reality, it is merely a contract of temporary insurance, usually in effect until a policy is issued formally accepting

944

the risk or until the risk is declined. In the absence of estoppel, which is not involved here, a so-called "binder" does not impose liability upon an insurance company unless it is in and of itself a valid contract of insurance.

In the cases cited above written binders were actually executed by the insurers, who were held liable because the evidence was sufficient to show the meeting of minds on the necessary elements. On the other hand, in Hopkins v. Phoenix Fire Insurance Co., supra, 200 Ky. 365, 370–371, 254 S.W. 1041, the court held there was no liability under a "binder" because the evidence failed to show a meeting of the minds on some of the necessary elements.

■■ In the present case, no written "binder" was issued. That is not decisive, since an oral contract of insurance, if proven, is enforceable. Shawnee Fire Insurance Co. v. Roll, supra, 145 Ky. 113, 140 S.W. 49. But, the contract of temporary insurance sued on must be proven. If, following negotiations for insurance, sufficient time elapses in which a written "binder" would normally be issued and no such "binder" is issued, it is substantial evidence that the minds of the parties have not met with respect to the insurance applied for. Negotiations looking to the issuance of a written policy of insurance do not constitute an oral contract of insurance, unless it is so understood by the parties and all of the necessary elements are agreed to by the parties. Svea Fire & Life Insurance Co. v. Foxwell, 234 Ky. 95, 99, 27 S.W.2d 675; Campbell v. Aetna Insurance Co., Ky.1954, 269 S.W.2d 292. In the present case the issue is not the existence or nonexistence of a written "binder," but the plain, factual question of whether the minds of the parties had met on all of the elements necessary to constitute a contract of temporary insurance. This factual issue was decided by the trier of the facts against appellant. The judgment entered necessarily followed such a finding.

The judgment is affirmed.