911 F.2d 733
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
RES-CARE DEVELOPMENT CO., INC., Plaintiff-Appellant,
v.
THE OAKES AGENCY, INC., C. Wayne Oakes, Bill Faircloth, and
The Continental Insurance Co., Defendants-Appellees.
 No. 89-6503.
 United States Court of Appeals, Sixth Circuit.
 Aug. 23, 1990.
 
 BEFORE: KENNEDY and RALPH B. GUY, Circuit Judges, and TIMBERS, Senior Circuit Judge.*
 GUY, Circuit Judge.
 
 
 1
 Plaintiff, Res-Care Development Company, Inc. (Res-Care), appeals from the entry of summary judgment on its breach of contract and negligence claims in this diversity action. Because we find that the parties merely negotiated insurance coverage for Res-Care without reaching agreement on several essential terms, we reject the plaintiff's contention that an oral insurance contract was formed and subsequently breached. We likewise reject the plaintiff's argument that the insurance agents negligently failed to procure insurance coverage for Res-Care, and thus affirm the entry of summary judgment in favor of the defendants.
 
 I.
 
 2
 Res-Care, a holding company incorporated in Kentucky with interests in nursing homes, federal job corps centers, and mental health facilities, initially learned in 1986 that its general liability and excess (umbrella) insurance carrier, Integrity Insurance Company (Integrity), was experiencing financial difficulties.[1] Additionally, Res-Care's $500,000 automobile fleet liability coverage through Liberty Mutual Insurance Company (Liberty Mutual) was scheduled to expire in September of 1987.[2] Therefore, in October of 1986, Res-Care opened discussions regarding its insurance needs with The Oakes Agency, Inc. (the Oakes Agency), a Tennessee insurance agency. Res-Care specifically expressed its interest in consolidating its automobile, property, general liability, and excess insurance with a single company. In response, defendants C. Wayne Oakes and Bill Faircloth of the Oakes Agency informed Ralph Coffman, the vice-president of administration who handled insurance coverage for Res-Care, that defendant Continental Insurance Company (Continental) could furnish Res-Care with the broad coverage it desired.
 
 
 3
 During late 1986 and early 1987, the Oakes Agency, acting predominantly through defendants Oakes and Faircloth, collected a substantial amount of information from Res-Care about the company's operations and insurance requirements. Then, on February 2, 1987, Coffman appeared on behalf of Res-Care at a meeting with Oakes, Faircloth, and Continental to discuss coverage. Coffman conceded that Continental did not agree at this meeting to furnish insurance coverage to Res-Care. Following the discussions with Continental, Coffman and other Res-Care executives met with Oakes and Faircloth on March 27, 1987, in Louisville, Kentucky. Oakes and Faircloth made a written presentation that included a letter summarizing the insurance coverage contemplated by Res-Care and the Oakes Agency. The letter, however, merely provided tentative figures regarding deductibles,[3] and included only blank lines for the total premium and its components. (App. at 18).
 
 
 4
 Several days later, an employee in the Continental marketing department gave defendant Faircloth a preliminary quote of $491,000 for the total premium and indicated that a reduction of this figure might be possible. According to Continental, the release of such information was unauthorized. Nevertheless, on April 3, 1987, the information was transmitted to Coffman. On April 27, 1987, after Res-Care received notification that it would lose its existing general liability and excess coverage effective April 24, 1987, due to the bankruptcy of Integrity, Coffman contacted Continental on behalf of Res-Care to pursue reduction of the preliminary quote and to secure written confirmation of the broad insurance coverage discussed by the parties. At that point, a Continental employee notified Coffman that Continental had no interest in providing insurance to Res-Care. Coffman contacted Faircloth the next day, and was told by Faircloth that Continental had sent the Oakes Agency a letter confirming its intention to provide coverage. As Faircloth later admitted, however, this representation was completely untrue. (App. at 1017). A May 7, 1987, letter from Faircloth to Coffman ultimately confirmed that Continental refused to provide coverage for Res-Care.[4] Throughout the entire course of events involving Res-Care, the Oakes Agency, and Continental, Res-Care never received a written binder, a premium statement, a written policy, or a certificate of insurance from Continental. Moreover, Res-Care never cancelled its automobile fleet coverage with Liberty Mutual. Res-Care eventually obtained general liability and professional liability coverage with The Evanston Group in June of 1987, as well as an extension of its existing $500,000 automobile fleet coverage with Liberty Mutual in September of 1987, but never secured the excess coverage that the Oakes Agency had attempted to provide through Continental.
 
 
 5
 On September 10, 1987, an employee of a Res-Care subsidiary was involved in an automobile accident while driving a company car in Mississippi. The accident resulted in the death of another driver and serious injuries to a passenger in another car. When the passenger and the deceased driver's estate filed suit in Mississippi seeking a total of $40,000,000 in damages, Continental refused to defend Res-Care and its subsidiary. Consequently, Res-Care filed this diversity action against the Oakes Agency, Faircloth, Oakes, and Continental requesting complete indemnity for any loss sustained in the Mississippi suit up to the $3 million coverage figure discussed with the defendants. Res-Care premised its demand for indemnity upon two state law claims--breach of contract against all four defendants and negligence against Faircloth, Oakes, and the Oakes Agency.
 
 
 6
 On July 14, 1989, the district court filed a memorandum opinion and order granting all of the defendants' motions for summary judgment. The district court reasoned that any oral agreement that may have been reached between Res-Care and Continental lacked certainty with respect to several significant terms such as the effective date and duration of the policy and the amount of the premium. Thus, under Kentucky law, no oral insurance contract was ever formed. In addition, the district court ruled that Res-Care had failed to support its negligence claim by offering no proof of damages resulting from the alleged negligence of Oakes, Faircloth, or the Oakes Agency. Following the entry of summary judgment, the plaintiff filed a motion to alter or amend the judgment under Federal Rule of Civil Procedure 59(e). In response, the district court entered a two-page memorandum and order on November 3, 1989, denying the plaintiff's Rule 59(e) motion. The district court stated that, although its review of the record revealed "an issue of fact as to whether a contract was entered,"[5] any resulting contract was merely a temporary oral binder that lapsed after ninety days under Ky.Rev.Stat. Sec. 304.14-220(2). Accordingly, the district court reaffirmed the entry of summary judgment for all of the defendants. This appeal followed.
 
 
 7
 The plaintiff argues on appeal that the district court correctly identified the existence of a material factual issue concerning the formation of an oral insurance contract between Res-Care and Continental, but erred in characterizing the oral agreement as a temporary oral binder that expired before the date of the Mississippi car accident. The plaintiff also contends that the record contains ample evidence to support its claim that Oakes, Faircloth, and the Oakes Agency were negligent, and that their negligence resulted in damage to Res-Care. We shall address the entry of summary judgment with respect to each of the plaintiff's claims--breach of contract and negligence--individually. Our review of the rulings on the summary judgment motions is de novo.[6] See, e.g., Storer Communications, Inc. v. National Ass'n of Broadcast Employees and Technicians, AFL-CIO, 854 F.2d 144, 146 (6th Cir.1988).
 
 II.
 
 8
 Under Kentucky law, insurance contracts may be either oral or written. See, e.g., Young v. White, 551 S.W.2d 12, 14 (Ky.App.1977); Aetna Ins. Co. of Hartford, Conn. v. Licking Valley Milling Co., 19 F.2d 177, 180 (6th Cir.1927). "[I]n order for an oral contract of insurance to exist, it is necessary that the minds of the parties meet on the following essential matters: (1) the subject matter, (2) the risk insured against, (3) the rate of premium, (4) the duration of the risk, (5) the amount of insurance and (6) the identities of the parties." Rabb v. Public Nat'l Ins. Co., 243 F.2d 940, 942 (6th Cir.1957); accord Campbell v. Aetna Ins. Co., 269 S.W.2d 292, 294 (Ky.App.1954). Although Res-Care asserts that the modern trend is to apply an objective "reasonable person" standard to evaluate whether an oral insurance contract has been formed by negotiating parties, see, e.g., National Fire Ins. Co. of Hartford v. Tongue, Brooks & Co., 61 Md.App. 217, ---, 486 A.2d 212, 216 (1985), Kentucky law unmistakably focuses only on the negotiating parties' subjective understandings. See, e.g., Young, 551 S.W.2d at 14 ("The parties must understand that they are entering a binding contract."). As we stated in Rabb, "[n]egotiations looking to the issuance of a written policy of insurance do not constitute an oral contract of insurance, unless it is so understood by the parties and all of the necessary elements are agreed to by the parties." Rabb, 243 F.2d at 944.
 
 
 9
 In this case, the parties never reached agreement with regard to either the effective date or the duration of insurance coverage. The plaintiff states that this lack of formal agreement is immaterial because the parties were operating under "the presumption that [an oral agreement] was made in contemplation of a policy containing the terms and conditions in customary use." Preferred Risk Fire Ins. Co. v. Neet, 262 Ky. 257, ---, 90 S.W.2d 39, 42 (Ky.App.1936). Reliance upon customary practice to supply missing terms, however, offers no guidance as to the effective date of the purported oral insurance contract. Additionally, standard practice cannot fill in the missing insurance premium rate or the deductible amounts under negotiation. With respect to the premium, the plaintiff cites the $491,000 figure transmitted from Continental to Res-Care through the Oakes Agency as the price of the insurance coverage it claims. Coffman's characterization of this figure as a "preliminary quotation" (App. at 272), however, belies the plaintiff's contention that the price quote amounted to an agreed premium. Moreover, the fact that Res-Care chose not to cancel its automobile fleet coverage with Liberty Mutual undercuts the argument that Coffman believed Res-Care had obtained the desired coverage through Continental. For these reasons, we find that no oral contract was ever formed.[7]
 
 III.
 
 10
 To recover on its negligence claim against the Oakes Agency, Faircloth, and Oakes under Kentucky law, Res-Care must establish: (1) the existence of a duty owed by the defendants to the plaintiff; (2) a breach of the duty; (3) that the breach was the proximate cause of injury; and (4) resulting damages. See, e.g., Helton v. Montgomery, 595 S.W.2d 257, 258 (Ky.App.1980). Although Kentucky law does not define insurance agents as professionals, see Plaza Bottle Shop, Inc. v. Al Torstrick Ins. Agency, Inc., 712 S.W.2d 349, 351 (Ky.App.1986), the Kentucky Supreme Court recently recognized a cause of action against an insurance agency that "negligently failed to provide ... requested [insurance] coverage, which resulted in [an] uninsured loss." Grigsby v. Mountain Valley Ins. Agency, Inc., --- S.W.2d ---- (Ky. June 28, 1990). Res-Care argues that in this case, as in Grigsby, the insurance agency and its representatives are "liable for the loss incurred due to [their] negligent failure to provide the requested coverage." Id. at ---. We disagree.
 
 
 11
 The rule adopted by the Kentucky Supreme Court that an insurance agency may be held liable for negligently failing to obtain requested coverage is not absolute. For example, "in order to support recovery, it must be demonstrated that coverage could have been procured prior to the occurrence of the insured event." American Motorists Ins. Co. v. Salvatore, 476 N.Y.S.2d 897, 900 (N.Y.App.Div.1984). Here, the plaintiff cannot make such a showing. As the plaintiff has observed, "[t]he Res-Care account was the largest account which the Oakes Agency had ever handled and the commission to be earned on this account would likewise have been the largest single commission which Oakes and Faircloth had ever received." Res-Car Brief at 11. Consequently, the Oakes Agency and its agents were eager to provide the broad insurance coverage that Res-Care requested, but Continental's ultimate refusal to write the policy scuttled the deal that the Oakes Agency attempted to arrange. In this respect, the plaintiff's negligence claim significantly differs from claims against insurance agencies which negligently procured improper coverage or failed to submit applications for readily available coverage. See, e.g., Kinns v. Schulz, 516 N.Y.S.2d 817, 819 (N.Y.App.Div.1987). Because the Oakes Agency, despite its best efforts, could not possibly obtain the insurance coverage that the plaintiff requested, the plaintiff cannot establish that the failure to obtain coverage constituted actionable negligence under Kentucky law.[8]
 
 
 12
 AFFIRMED.
 
 
 
 *
 The Honorable William H. Timbers, United States Court of Appeals for the Second Circuit, sitting by designation
 
 
 [1]
 The general liability policy provided $1 million of coverage and the umbrella policy furnished $2 million in excess coverage
 
 
 [2]
 Because the automobile fleet policy only furnished coverage up to $500,000, Res-Care was responsible for any amounts paid on vehicle claims between $500,000 and $1 million. Any amounts in excess of $1 million were covered up to the $3 million policy limit under the Integrity umbrella policy
 
 
 [3]
 The statement regarding property coverage, for example, indicated that "all claims will be settled on a replacement cost basis with a $1,000 deductible," but suggested "that [Res-Care] should raise [its] deductible to $5,000" in order to "generate an approximate savings of $10,000 on [its] insurance cost."
 
 
 [4]
 The letter from Faircloth to Coffman states as follows:
 As previously indicated, we have talked with Continental Insurance Company and they will not write the coverage for Res Care. There was some confusion on the part of Continental in that the quote was not complete and should not have been released. We regret that they would not honor their efforts to write your account.
 
 
 [5]
 The district court offered no indication as to what the factual dispute might be
 
 
 [6]
 In reviewing the district court's entry of summary judgment, we must apply the Supreme Court's directive that "the plain language of Rule 56(c) mandates the entry of summary judgment ... against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). Although the plaintiff is technically correct in stating that the party seeking summary judgment "must meet the initial burden of showing 'the absence of a genuine issue of material fact' as to an essential element of the non-movant's case[,]" Street v. J.C. Bradford & Co., 886 F.2d 1472, 1479 (6th Cir.1989) (footnote omitted), the plaintiff seemingly fails to recognize that the defendants may meet this burden by simply "pointing out to the district court ... that there is an absence of evidence to support the nonmoving party's case." Celotex, 477 U.S. at 325; accord Street, 886 F.2d at 1479. Since the defendants in this case have adequately identified aspects of each claim purportedly lacking support in the record, the plaintiff must come forward with evidence sufficient to create a genuine issue of material fact to avoid summary judgment
 
 
 [7]
 Assuming arguendo that an oral contract was formed, the agreement amounted to nothing more than an oral binder that expired by operation of Ky.Rev.Stat. Sec. 304.14-220(2) prior to the automobile accident for which Res-Care seeks coverage. We have defined a binder as "merely a contract of temporary insurance, usually in effect until a policy is issued formally accepting the risk or until the risk is declined." Rabb, 243 F.2d at 943-44; accord Potomac Ins. Co. v. Motorist Mutual Ins. Co., 598 S.W.2d 461, 463 (Ky.App.1979). Coffman, who repeatedly stated at his deposition that he thought Res-Care had an oral binder (App. at 268, 622-623), could not possibly have believed that Continental would furnish long-term, comprehensive coverage strictly on the basis of an oral agreement
 
 
 [8]
 Even if we were to find that the plaintiff could allege a viable negligence claim against the Oakes Agency, defendants Oakes and Faircloth would be entitled to summary judgment. As we recently observed, "Kentucky law insulates agents from liability for 'acts done within the scope of [their] agency on behalf of a disclosed principal." Summit Petroleum Corp. of Indiana v. Ingersoll-Rand Fin. Corp., --- F.2d ----, ---- (6th Cir. July 6, 1990) (collecting cases). This general rule is directly applicable in the insurance context. See, e.g., Fryar v. Employers Ins. of Wausau, 607 P.2d 615, 619 (N.M.1980)